KING *v.* F. B. TODD & SONS, INC.

1. APPEAL AND ERROR—JUDGMENT IN ACTION INVOLVING LESS THAN $500—OTHER SIMILAR CASES.

   Appeal is allowed from judgment in action on a note in the amount of only $99.42 where enforcement of payment of a large number of notes aggregating about $4,000 given under similar circumstances may depend on the outcome of instant case.

2. BILLS AND NOTES—INDORSEMENT—MATURITY—OWNERSHIP—EVIDENCE.

   In indorsee's action on promissory note, evidence having a tendency to show that plaintiff did not acquire his interest until after it became past due and as to whether plaintiff was the owner or not was properly received.

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SPECIFIC METHOD OF PAYMENT AS AFFECTING NEGOTIABILITY.

   Question as to whether or not a note providing a specific method of payment thereof was a negotiable instrument is not decided by the Supreme Court where it was not raised therein although it was held to be such an instrument by the trial court.

4. BILLS AND NOTES—CROP NOTES—BONA FIDE PURCHASER FOR VALUE—OWNERSHIP—QUESTION FOR TRIER OF FACTS.

   In action by indorsee of promissory note given by farmer to canning company and noted thereon to be payable from proceeds of crop, evidence presented a question for jury as to whether or not plaintiff who was a director, vice-president, and chairman of the executive committee of the company was a bona fide purchaser for value and whether or not he actually was the owner of the note.

5. SAME—CROP NOTES—METHOD OF PAYMENT—INDORSEMENT.

   Where the amount represented by a note, given on June 15, 1938, due December 1, 1938, to payee canning company, which bore a

statement above the maker's signature reading, ''This note is to be paid from proceeds of crop,'' was deducted from the amount due maker for his crop of spinach but note itself was not returned, the payee could not collect it a second time and its indorsee would not become a bona fide purchaser for value if he knew of the assignment of the crop and provision for payment of note from proceeds thereof.

6. SAME—PARTICULAR METHOD OF PAYMENT.
The holder of a negotiable instrument by indorsement with knowledge of the maker's equities against the payee as to the particular method of payment, and who has thus purchased the paper, takes subject to the equities existing between the original parties.

7. SAME—HOLDER IN DUE COURSE—DEFINITION.
A holder in due course is one who takes a negotiable instrument in good faith, for value, and, at time of negotiation to him, without notice of any infirmity in the instrument or defect in the title of the person negotiating it (2 Comp. Laws 1929, § 9301).

8. SAME—INDORSEMENT—METHOD OF PAYMENT.
The title of an indorsee of a note is defective if he negotiates it in breach of faith from a payee to whom the maker had assigned a growing crop as security for payment and indorsee knew that payment would be made out of the proceeds of the crop in accordance with the terms of the note (2 Comp. Laws 1929, § 9304).

9. SAME—BONA FIDE PURCHASER FOR VALUE—BURDEN OF PROOF.
In suing as a bona fide purchaser for value of a note, an indorsee has the burden of proving that he was a holder in such capacity.

10. SAME—METHOD OF PAYMENT—INDORSEMENT—BONA FIDE PURCHASER FOR VALUE.
It is a question of fact as to whether an indorsee of a note in which a specific method of payment is provided became a bona fide purchaser for value merely by receiving the note as an indorsee under circumstances which would lead an ordinarily prudent man to investigate.

Appeal from Eaton; McDonald (Archie D.), J. Submitted October 4, 1944. (Docket No. 41, Calendar No. 42,804.) Decided November 30, 1944.

Assumpsit by Forest King against F. B. Todd & Sons, Incorporated, on a note. Verdict and judgment for defendant on trial *de novo* in circuit court. Plaintiff appeals. Affirmed.

*Rosslyn L. Sowers,* for plaintiff.

*Burton G. Cameron,* for defendant.

BUTZEL, J.   Defendant, through C. B. Todd, represented as its owner, ran a farm where under a contract entered into on February 23, 1938, it agreed with the Charlotte Canning Company to plant, cultivate and properly care for, harvest and deliver to the canning company during the season of 1938, 12 acres of spinach. The canning company agreed to pay $17 per ton on December 1, 1938, for all spinach delivered. The company further agreed to furnish defendant with the necessary seed at 20 cents per pound, the payment for which was to be deferred and deducted from the amount to become due defendant for the spinach. The defendant agreed to plant the acreage in accordance with instructions issued by the company, and not to plant any other seed except that furnished by the company; that the entire crop should become the property of the company from the moment that the crop appeared; that if the defendant should fail to care for the crop in good and husbandlike manner, the company would have the right to enter upon the premises of the grower to care for, harvest and deliver the crop to the factory and charge all necessary costs to defendant. Other covenants of the contract are not pertinent to the issues involved herein.

Plaintiff was the selling agent of the American Agricultural Chemical Company, and as such sold fertilizer to the canning company as well as to

others. Evidently 'the canning company also sold fertilizer to defendant and on June 15, 1938, defendant executed and delivered a note to the Charlotte Canning Company agreeing to pay to the company $99.42 on December 1, 1938. In a separate line at the bottom of the note just before the signature, the words appear, ''This note to be paid from proceeds of crop.'' The note some time later was indorsed to plaintiff King. Just when he became the holder is one of the questions raised by defendant. Defendant delivered the crop of spinach to the canning company, money was deducted for the amount of the note, the balance was paid to defendant and the company agreed to return the note to Mr. Todd.

During the early part of the summer, defendant became suspicious of Mr. Quirk, the manager of the canning company, and Mr. Todd went to see plaintiff. Plaintiff, besides selling the fertilizer to the canning company, was a director and the vice-president of the canning company and chairman of its executive committee which conducted the business. Plaintiff assured Mr. Todd that Mr. Quirk was ''all right.'' Plaintiff also testified that he was familiar with the contracts with the farmers. Plaintiff identified the contract of February 23, 1938, as referring to the crop from the proceeds of which the note was to be paid. It was also shown that plaintiff was the holder of many other notes issued to the canning company by the farmers under similar contracts. While the amount involved in this suit is only $99.42, we allowed an appeal as plaintiff's right to enforce payment of a large number of notes, aggregating in the neighborhood of $4,000, given by other farmers and issued and paid to the canning company under similar circumstances, may depend upon 'the outcome of the suit.

Although the plaintiff testified that the notes were indorsed to him early in the summer of 1938, the

contract of February 23, 1938, hereinbefore described, had either an underwriting or an agreement attached to it dated February 8, 1939, in which plaintiff, Quirk and another member of the executive committee assigned all moneys due to the canning company, held by a seed company in Detroit, to the American Agricultural Chemical Company. It further stated that it was understood and agreed ''that this money is to be paid to the American Agricultural Company to apply against farmer's notes held by said company,'' thus indicating that long after the note became due the plaintiff, with the other members of the executive committee, stated over their signatures that these farmers' notes were held by the American Agricultural Chemical Company. It was further shown that later, in bankruptcy proceedings, a schedule of incumbrances on the property of the canning company named plaintiff and the American Agricultural Chemical Company as security holders with a lien of $3,073, the indebtedness being described as secured by ''Grower Fertilizer Notes,'' and an assignment of a seed account due from a seed supply house. The trial court properly permitted the introduction of both of these documents over the objection of plaintiff. They have a tendency to show that plaintiff did not become the holder of the note until after it became past due, and also they raise the question whether plaintiff was the owner or not. The judge, however, instructed the jury properly in regard to the plaintiff's rights as a lien holder and the application of a $500 payment made by the seed company.

The main question presented is whether plaintiff is a bona fide holder without notice. The case came up originally from the justice court. The informality shown by the oral pleadings seemed to have prevailed through the subsequent trial in the circuit court. Defendant claimed fraud and that plaintiff

was not a holder in due course. It became a jury question whether plaintiff, with his intimate knowledge that a director, vice-president and chairman of the executive committee is supposed to possess, was not familiar with the details of the business including the fact that the note was to be paid from the proceeds of the crop in which the canning company claimed an interest by agreement. The judge instructed the jury that at the time plaintiff acquired the note it would appear that he acquired it without any bad faith and that there was no fraud perpetrated at the time the note was given or executed. He, however, stated that "it is possible where,—and probable,—and proper, that negotiating a note * * * under circumstances such as these where plaintiff had a fairly active part in the management of the company, should be scrutinized more carefully than if they were negotiated through some other institution or person, with whom he had no connection," but, however, it was a question for the jury to determine. The charge in the main was very favorable to plaintiff. The judge stated that the note was a negotiable instrument notwithstanding that it was to be paid out of the crop. We need not discuss the question whether the instrument was a negotiable one as it is not raised. It, however, did become a question whether plaintiff was a bona fide purchaser for value; whether, occupying the close position in the management of the company, there was not more than a fair inference that he knew all about the agreement in regard to the crops and the payment of the indebtedness it provided for. The further question arises whether the terms of the written agreement dated long after the note became due and showing that then the American Agricultural Chemical Company was the holder of the notes did not contradict the claim of plaintiff that he be-

came the owner of the note before its maturity. Notes could not be collected a second time by the canning company, nor would plaintiff be a bona fide purchaser for value if, when he took the notes, he knew of the assignment of the crop and the provision for payment of the note from the proceeds of the crop.

A somewhat analogous question arose under different facts in *National Bank of Suffolk* v. *Winslow,* 193 N. C. 470 (137 S. E. 320). In that case the holder of a note had actual notice of an agreement that provided that the note was to be paid from the proceeds of a peanut crop raised by the maker and in indorser's hands, and it was held that the holder's rights were subject to the agreement, and the holder could not recover against the maker of the note. We quote from the syllabus:

"The holder of a negotiable instrument by indorsement with knowledge of the maker's equities against the payee as to the particular method of payment, and who has thus purchased the paper, takes subject to the equities existing between the original parties."

Under section 54 of the negotiable instruments law (2 Comp. Laws 1929, § 9301 [Stat. Ann. § 19.94]), the holder in due course is one who takes a negotiable instrument in good faith and for value and at the time that it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Under section 57 (2 Comp. Laws 1929, § 9304 [Stat. Ann. § 19.97]), the title of a person is defective when he negotiates a negotiable instrument in breach of faith if plaintiff knew that the crop had been assigned to the canning company and it had been agreed that the note would be paid out of the proceeds of the

crop in accordance with its terms. In *Helmer* v. *Krolick,* 36 Mich. 371, we held that whether a purchaser is entitled to be considered a bona fide holder, it is his bona fides and not that of the payee that is in question.

The burden was upon plaintiff to prove that he was a bona fide purchaser for value. *Cartier* v. *Morrison,* 232 Mich. 352. The test is not whether the circumstances would naturally lead the ordinarily prudent man to investigate, but whether they were such as to make it bad faith not to do so. *Thompson* v. *Village of Mecosta,* 141 Mich. 175, and cases therein referred to. A question of fact was raised and we believe the verdict of the jury for defendant was fully sustained by the evidence.

Judgment is affirmed, with costs to defendant.

North, C. J., and Starr, Wiest, Bushnell, Sharpe, and Reid, JJ., concurred. Boyles, J. did not sit.