NATIONAL BANK OF SUFFOLK v. A. R. WINSLOW.

(Filed 30 March, 1927.)

**1. Negotiable Instruments—Contracts, Written—Evidence — Parol Evidence—Notice—Equities.**

A bank discounting a note with notice that the payee has on hand merchandise of the maker which was to be sold for the payment of the note, takes the note subject to this particular mode of payment, and parol evidence of this agreement in the holder's action thereon against the maker is not contrary to the rule of evidence, that a written instrument may not be varied, altered or contradicted by parol.

**2. Same—Knowledge.**

The holder of a negotiable instrument by endorsement, with knowledge of the maker's equities against the payee. as to the particular method of payment, and who has thus purchased the paper, takes subject to the equities existing between the original parties.

**3. Same—"Set-Off."**

Where the holder of a negotiable instrument given by the maker containing the words "without off-set," takes with knowledge that it is to be paid out of the proceeds of sale of the maker's property in the hands of the payee, and thus subject to the equities of the maker, the words "without off-set" taken in their proper significance, does not relieve the holder of his obligation to recognize the equities of the maker as to the particular manner in which the instrument should be paid.

CIVIL ACTION,·tried before *Grady, J.,* at August Special Term, 1926, of PERQUIMANS.

The evidence tended to show that the defendant was engaged in buying and raising peanuts in Perquimans County. In the fall of 1921 the defendant made an agreement with T. H. Birdsong, trading as Birdsong Storage Company, that the defendant was to ship the said Birdsong peanuts raised and purchased by him, and the said Birdsong was to handle said peanuts on a commission basis. It was further agreed that as the defendant should ship peanuts to Birdsong, he would draw drafts on Birdsong, or the Birdsong Storage Company, for sixty-five or seventy-five per cent of the cost of the peanuts so shipped and delivered. Prior to 16 November, 1921, the defendant drew a draft for $8,000 on Birdsong, which he deposited in a bank at Hertford, and this draft came into the possession of the plaintiff. There was delay in paying the draft, and the defendant went to Suffolk to see Birdsong, and Birdsong and the defendant went to the plaintiff bank to make inquiry about said draft. At that time Birdsong was an inactive vice-president of plaintiff bank. The defendant and Birdsong went into the plaintiff bank and

Mr. Woolford, cashier, stated to them that the plaintiff had the draft, and Birdsong requested the cashier to pay the draft, but was informed by the cashier, "I cannot pay that draft that way. If I pay that draft, I must charge it to somebody, or must have some consideration for it." Thereupon Birdsong suggested to the defendant that the defendant give a note for $8,000, the amount of the draft, payable to the Birdsong Storage Company. At the time of this conversation, the cashier of the plaintiff was sitting at his desk eight or ten feet from where this conversation took place. The defendant executed the note, and Birdsong duly endorsed it and handed it to the cashier, stating: "I am going to pay it right away out of my own money or out of Mr. Winslow's peanuts." Mr. Woolford said, "Mr. Birdsong, that is all right. I don't know Mr. Winslow; I don't know whether he is responsible or not, and I shall look to you for the money." Plaintiff said: "You gentlemen don't have to have my word for my responsibility—Mr. Birdsong has my responsibility with him." Birdsong told Woolford: "I am the man to pay it. I have Mr. Winslow's peanuts, plenty to pay it two or three times over." That he would either pay the note himself or sell these two thousand bags right then, in a few days. *He told Mr. Woolford that he and I had agreed that the note should be paid out of the peanuts.* He said he would sell the peas and pay it himself." The defendant was a stranger to the officials of the bank.

The evidence tended to show further that the defendant had shipped to Birdsong about twenty cars of peanuts, which, at the market. price, would have paid off and discharged all of defendant's indebtedness and left a large sum in excess thereof. Upon delivery of the note so made by the defendant and endorsed by said Birdsong, the plaintiff bank paid the $8,000 draft. The note was in words and figures as follows: "$8,000.00. Suffolk, Va., 16 November, 1921. On demand . ... .... days after date, I promise to pay to Birdsong Storage Company, or order, negotiable and payable without offset at the National Bank of Suffolk, Suffolk, Va., eight thousand and no/100 dollars, for value received, with ten per cent, for cost of collection; and it is agreed upon by the parties that the interest on this note shall be payable in advance, and we, principal and endorsers, hereby waive the benefit of our homestead exemption as to this debt. (Signed) A. R. Winslow, Winfall, N. C."

Birdsong paid the interest on the note and $2,000 on the principal, but upon failure to pay the balance, the plaintiff instituted this action against the defendant, Birdsong not being a party to the suit.

The issues and the answers of the jury thereto were as follows:

1. At the time of the execution of the $8,000 note, was it understood and agreed between A. R. Winslow and the Birdsong Storage Company

that said note was to be paid from the sale of peanuts then in the possession of said Birdsong Storage Company, belonging to A. R. Winslow? Answer: Yes.

2. If so, did the National Bank of Suffolk have actual notice of said agreement at the time said note was endorsed to it by said Birdsong Storage Company? Answer: Yes.

3. Did the defendant Winslow have with the said Birdsong Storage Company a sufficient amount of peanuts to pay said note? Answer: Yes.

4. In what amount, if anything, is the defendant indebted to the plaintiff on account of said note? Answer: Nothing.

Judgment was entered upon the verdict in favor of defendant, and the plaintiff appealed.

*Ehringhaus & Hall for plaintiff.*
*McMullan & Leroy for defendant.*

BROGDEN, J. Three questions of law arise upon the evidence:

1. In an action between the holder and the maker of a negotiable instrument, is parol evidence admissible to establish an agreement between the maker and the payee creating a particular mode of payment?

2. If so, does an endorsee taking such note, with actual knowledge of the agreement, hold it subject to the maker's equities arising on said agreement?

3. What is the effect of the words "without offset" contained in the note in controversy?

The reason for excluding parol evidence, tending to establish a collateral agreement, as a part of a negotiable instrument, is that such evidence would contradict or vary the written instrument. The law is firmly established that parol evidence is inadmissible to contradict or vary the terms of a negotiable instrument, but this rule does not apply to a parol agreement made contemporaneously with the writing providing a mode of payment. This rule rests upon the theory that a contract may consist of both written and unwritten terms, and if the unwritten portion does not actually vary or contradict the written portion, the whole contract will be received in evidence. The rule is thus stated in *Evans v. Freeman,* 142 N. C., 62: "The competency of such evidence for the purpose of establishing the other and unwritten part of the contract, or even of showing a collateral agreement made contemporaneously with the execution of the writing, has been thoroughly settled by the decisions of this Court. Indeed, it seems to us that the very question we are now considering has been passed upon by this Court several times. Applying the rule we have laid down, it has been adjudged competent

BANK *v.* WINSLOW.

to show by oral evidence a collateral agreement as to how an instrument for the payment of money should in fact be paid, though the instrument is necessarily in writing and the promise it contains is to pay so many dollars."

In Brown on Parol Evidence, sec. 117, it is held that "parol evidence is admissible to show an agreed mode of payment and discharge other than that specified in the bond." And in *Typewriter Co. v. Hardware Co.,* 143 N. C., 97, it was held that when a promissory note is given, payable in money, parol evidence may be received tending to establish as a part of the contract a contemporaneous agreement that a different method of payment should be accepted. *Carrington v. Waff,* 112 N. C., 116; *Quinn v. Sexton,* 125 N. C., 447; *Martin v. Mask,* 158 N. C., 436; *Mfg. Co. v. Mfg. Co.,* 161 N. C., 431; *Pierce v. Cobb,* 161 N. C., 300; *Hunter v. Sherron,* 176 N. C., 226.

The jury has found from competent evidence that the plaintiff had "actual notice of said agreement at the time said note was endorsed to it by said Birdsong Storage Company." Therefore, the plaintiff held the note subject to the terms of the agreement and equities therein created. *Kerchner v. McRae,* 80 N. C., 219; *Carrington v. Waff,* 112 N. C., 116; *Evans v. Freeman,* 142 N. C., 62.

The note in controversy contained the language "negotiable and payable without offset at the National Bank of Suffolk." The plaintiff contends that the words "without offset" inserted in this instrument prevents the application of the rule declared in *Evans v. Freeman, supra,* for the reason that it amounted to a declaration by the maker, the defendant in this action, that he would not plead a set-off or counterclaim to said note. It therefore becomes necessary to determine whether or not the defense interposed by the defendant is or constitutes an offset or a set-off as contemplated by law. Set-off has been defined to be "a mode of defense whereby the defendant acknowledges the justice of the plaintiff's demand on the one hand, but on the other sets up a demand of his own to counter-balance it, either in whole or in part. Technically speaking, a set-off is a counter-demand which the defendant holds against the plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action." Waterman on Set-off, Recoupment and Counter-claim, secs. 1 and 2.

The first case in our own State to define a set-off is *McDowell v. Tate,* 12 N. C., 249, and the definition is as follows: "A set-off is a mutual independent claim, which still continues to exist as such, and one which the parties did not intend should be appropriated to the satisfaction of an existing demand, but that each should have mutual causes of action, and of course mutual actions, if they pleased, against each other."

Again, in *Hurst v. Everett,* 91 N. C., 399, a set-off is thus defined: "A set-off, as originally provided by statute, was the right of a defendant when sued for a debt to counter-balance it, in whole or in part, by setting up as a defense a demand of his own against the plaintiff."

As defined and interpreted by the decisions, a set-off applies only to mutual independent claims between the parties, and must arise out of a transaction extrinsic to the cause of action asserted by the plaintiff. It is not such a demand as can be made the subject of affirmative relief, and this constitutes the distinction between a counter-claim proper and a set-off. *Electric Co. v. Williams,* 123 N. C., 51; *Smith v. French,* 141 N. C., 6; *Sewing Machine Co. v. Burger,* 181 N. C., 241; *Williams v. Williams,* 192 N. C., 405.

Applying the principles of law deduced from the authorities to the facts of this case, it would seem apparent that the collateral agreement relied upon by the defendant as a defense to the action cannot be deemed or considered an offset as defined by the courts. The defense, by a fair interpretation, partakes more of the nature of payment than of offset. "A payment is, by consent of the parties, either express or implied, appropriated to the discharge of a debt." *McDowell v. Tate, supra; Suggs v. Watson,* 101 N. C., 188.

The jury has found that the agreement was made as alleged by the defendant; that the plaintiff had actual notice of the agreement, and that at the time the note in controversy was delivered to the plaintiff in accordance with the terms of the agreement that the Birdsong Storage Company had a sufficient amount of peanuts on hand belonging to the defendant to pay the note.

We therefore conclude that the case has been properly tried, and that the judgment as rendered should be affirmed.

No error.