BANK OF CHAPEL HILL v. A. ROSENSTEIN, DR. N. ROSENSTEIN, DR. L. S. BOOKER, AND ERIC COPELAND.

(Filed 1 January, 1935.)

**1. Appeal and Error J e—**

Testimony elicited on direct examination by leading questions will not be held for prejudicial error upon objection and exception where it appears that other testimony to the same import was given by the witness and others upon proper questions without objection.

**2. Bills and Notes G b: Evidence J a—Evidence of parol contemporaneous agreement for mode of payment of note held competent.**

In this action by the payee against the makers and endorsers of a note secured by a deed of trust on lands one of the makers set up the defense that he held title to the lands as a naked trustee for the other makers, and that at the time the note was executed the facts were explained to the payee, and that the parties entered a parol contemporaneous agreement that his liability on the note should be limited to the value of the lands: *Held,* testimony of the parol agreement was competent under the rule that evidence of a parol contemporaneous agreement providing a mode of payment is competent as between the parties.

**3. Bills and Notes G a—Substitution of endorsers by consent of all parties held not to discharge original note.**

The note sued on in this case was renewed from time to time and upon one of the renewals one endorser was substituted for another endorser by consent of all the parties: *Held,* the renewals and the substitution of endorsers with the consent of the parties did not operate as a discharge of the original note, and in an action instituted by the payee, the payee is bound by a parol contemporaneous agreement made with one of the makers at the time of the execution of the original note as to the mode of payment of the liability of such maker.

APPEAL by plaintiff from *Sinclair, J.,* and a jury, at January, 1934, Civil Term, of DURHAM. No error.

This action was brought by plaintiff to recover on a certain note set forth in the complaint. The prayer of plaintiff was as follows: "(1) For judgment against the defendants Eric H. Copeland, Abraham Rosen-

stein, N. Rosenstein, and L. S. Booker, jointly and severally, for the sum of ten thousand dollars ($10,000), with interest thereon from 2 December, 1931, until paid at the rate of six per cent per annum, together with the costs, charges, and expenses of this action. (2) That the deed of trust recorded in Book 137, at page 266, registry of Durham County, referred to in this complaint be foreclosed, the equity of redemption barred and the mortgaged premises sold under the direction of this court and the proceeds of the sale be applied, first, to the costs and expenses of said sale; second, to the payment and discharge of the indebtedness evidenced by the note dated 2 December, 1931; and third, the surplus, if any, be disbursed according to law. (3) That the court appoint a commissioner to foreclose said mortgage or deed of trust and sell the property therein described under the guidance and under the direction of this court. (4) That plaintiff be permitted to bid at said sale and purchase said property for its protection. (5) For such other and further relief as may be just and proper in law or in equity for the plaintiff to have."

The defendant Abraham Rosenstein denied that he was liable on the note, that he was merely holding the land as a naked trustee, with the agreement with plaintiff that no personal liability would attach to him in the transaction. The evidence on the part of the defendant Abraham Rosenstein was to the effect: In July, 1925, Eric H. Copeland, N. Rosenstein, and E. S. Booth purchased a tract of land just outside the corporate limits of the city of Durham, and as a matter of convenience had the deed to the property made to Eric H. Copeland and Abraham Rosenstein, who, at that time were unmarried, to the end that the wives of the purchasers of the property would not have to join in the deeds if and when the property was sold. At the time of the purchase of said tract of land the said purchasers applied to the Bank of Chapel Hill for a $10,000 loan. The application was made by E. H. Copeland and N. Rosenstein, who went in person to see M. E. Hogan, cashier of the Chapel Hill Bank, at which time they explained to Mr. Hogan that they had purchased said tract of land, and that same had been conveyed to Eric H. Copeland and Abraham Rosenstein as a matter of convenience, as they expected to develop the property and sell it off in small tracts of land, and the wives of the purchasers would not have to sign the deeds; and they further advised said Hogan that Abraham Rosenstein had no interest whatever in the transaction, but was acting as trustee in the matter merely for the accommodation of the purchasers of the property. It was further explained to the said Hogan at said time that it had been agreed between the purchasers of the property and Abraham Rosenstein that in signing the deed of trust and note to secure said loan that his liability would be limited to the value of the property

described in the deed of trust; that N. Rosenstein and E. S. Booth would endorse said note, and that they, together with Eric H. Copeland, the other purchaser, and the real estate purchased would be the security for the said $10,000 loan. Thereupon Mr. Hogan advised the said N. Rosenstein and Copeland that he would take the matter up with W. J. Holloway, who was then president of the First National Bank of Durham, N. C., and with whom his bank had done considerable business, and if Mr. Holloway approved of and recommended the loan, that the Bank of Chapel Hill would make it upon the terms and conditions stated by said Copeland and N. Rosenstein. A short time thereafter, Mr. Holloway approved the loan and the same was made by the Bank of Chapel Hill, with the understanding and agreement that the defendant Abraham Rosenstein had no interest in the transaction, and that his liability on the note would be limited to the value of the property. That the note was renewed from time to time as requested by the bank, and some time in the summer of 1930 E. S. Booth disposed of his interest in said tract of land to Dr. L. S. Booker, at which time it was explained to the said Booker the status of the title to the property, and the agreement between the owners of the property, Abraham Rosenstein and the Bank of Chapel Hill, and the said Booker agreed to assume the responsibility of the said E. S. Booth and carry out and perform the provisions of said agreement that had theretofore been imposed upon the said Booth. That the said Booth was released as endorser upon said note and Dr. L. S. Booker took his place as such endorser. The deed of trust was foreclosed some time in 1933, and the net proceeds therefrom were applied on the payment of said $10,000 note. The defendant Abraham Rosenstein, at the time of his transaction, was a young man and had just returned from school and had no property. Judgment by default was obtained against all of the defendants with the exception of Abraham Rosenstein, and this action was tried as to him only.

The material aspects of this defense by Abraham Rosenstein was denied by plaintiff. The issues submitted to the jury and their answers were as follows: "(1) Did the Bank of Chapel Hill have notice at the time of taking the note and deed of trust that Abraham Rosenstein was claiming no interest in the property, but he was holding same as trustee? A. 'Yes.' (2) Is the defendant indebted to the plaintiff, and, if so, in what amount? A. ........... It was agreed that the jury should not answer the second issue, and if the jury answered the first issue 'No,' that the court could answer the second issue as follows: '$7,314.01, with interest on $10,000 from 31 March, 1932, to 19 October, 1933, and interest on $7,314.01 from 19 October, 1933, until paid.' "

The judgment of the court below is as follows: "This cause coming on to be heard before his Honor, N. A. Sinclair, judge presiding, and a

jury, and the jury having answered the issue submitted to them in favor of the defendant Abraham Rosenstein, as set out in the record; it is therefore ordered, adjudged, and decreed by the court that the plaintiff take nothing against the defendant Abraham Rosenstein, and that the plaintiff pay such costs in this action as has been incurred by the defendant Abraham Rosenstein."

The plaintiff made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Graham & Sawyer and Bryant & Jones for plaintiff.*
*Oscar G. Barker and Brawley & Gantt for defendant.*

CLARKSON, J. The first issue submitted to the jury is as follows: "Did the Bank of Chapel Hill have notice at the time of taking the note and deed of trust that Abraham Rosenstein was claiming no interest in the property, but he was holding same as trustee?" On conflicting evidence, the jury answered this issue "Yes," in favor of Abraham Rosenstein. From the record, none of the evidence introduced on the part of Abraham Rosenstein bearing on this issue was objected to by the plaintiff except the following: "Q. Mr. Copeland, that was the understanding at the time the loan was made that Dr. Abraham Rosenstein was to sign the deed of trust, the note, and the notes to the bank? A. Yes, sir. Motion to strike out answer; motion overruled. Q. And was to be responsible of course to the extent of the land secured by the deed of trust, and to that extent only? A. That was my understanding, yes, sir. Motion to strike out answer; motion overruled." The question was leading, but from the evidence that had theretofore been introduced on the subject, we do not think that it was prejudicial.

There was other evidence of like import, unobjected to by plaintiff, for example, Abraham Rosenstein testified, in part: "All I know of the real estate transactions is that my father and Eric Copeland asked me to accommodate them as trustee in this matter so that my mother and Ernest Booth's wife would not have to sign deed for any transaction. In those days, real estate was booming and in case they wanted to make a transaction quick, we would not have to call upon their wives to sign the deed. It was my understanding I would be a trustee simply and purely. I didn't have any interest in the property and didn't know anything about it, and it was simply a matter of accommodation for my father and Mr. Copeland. At the time I signed the notes, it was my understanding that I was just a trustee and had no responsibility whatever beyond the value of the property. I have never paid any interest on any of the notes and never received any benefit from the land."

Eric Copeland testified, in part: "We told Mr. Hogan (cashier of the plaintiff's bank) that he, Abraham Rosenstein, had no interest in the property and was signing as a convenience and accommodation to the other owners, and he was not responsible for the property or anything. We had to have the money to buy the property. That at the time the loan was secured the financial condition of N. Rosenstein and Booth was good. Dr. Abraham Rosenstein did not pay any part of the interest on the note to the Bank of Chapel Hill."

The other exceptions and assignments of error made by plaintiff and to the charge of the court below we think unnecessary to consider. The admission of this evidence was the "milk in the cocoanut." Was evidence of this collateral agreement competent? We think so.

In *Justice v. Coxe,* 198 N. C., 263 (265-6-7), speaking to the subject, is the following: "Parol evidence offered by defendant for the purpose of showing all the terms of the contract between plaintiff and defendant with respect to the transaction of which the execution of the notes was only a part, was admissible and competent for that purpose. *Crown Co. v. Jones,* 196 N. C., 208, 145 S. E., 5. The agreement shown by the evidence does not contradict, add to, alter, or vary the terms of the notes. . . . The contract, which defendant alleged in his answer was entered into by and between him and the plaintiff contemporaneously with the execution of the notes, was, in effect, that defendant should be discharged of liability upon his conveyance of the land to George W. Knight, Edward Higgins, and Samuel Puleston, and upon their assumption of the notes. Parol evidence to show this contract was admissible upon the principle on which *Bank v. Winslow,* 193 N. C., 470, 137 S. E., 320, was decided. In the opinion in that case it is said, 'The law is firmly established that parol evidence is inadmissible to contradict or vary the terms of a negotiable instrument, but this rule does not apply to a parol agreement made contemporaneously with the writing providing a mode of payment.' Nor does the rule apply to such parol agreement providing for discharge of the maker otherwise than by payment." *Stack v. Stack,* 202 N. C., 461; *Wilson v. Allsbrook,* 203 N. C., 498; *Trust Co. v. Wilder,* 206 N. C., 124; *Galloway v. Thrash, ante,* 165.

The plaintiff contends that the original note was paid by renewals from time to time. We cannot so hold. The substitution of a new endorser who acquired another endorser's interest in the land was done by consent of all. This action is between the original parties. If the note had been transferred in due course, another principle would apply. In *Grace v. Strickland,* 188 N. C., 369 (372), we find the following: "In 8 C. J., 443 (656), it is said: 'Where a note is given merely in renewal of another note, and not in payment, the renewal does not extinguish the original debt nor in any way change the debt, except by

postponing the time of payment.' *Bank v. Bridgers,* 98 N. C., 67. If the second note be given and accepted in payment of the debt, and not in renewal of the obligation, a different principle will apply. *Wilkes v. Miller,* 156 N. C., 428; *Collins v. Davis,* 132 N. C., 106; *Smith v. Bynum,* 92 N. C., 108. The first note was surrendered, it is true, but the plaintiffs' admission that the note sued on was accepted in renewal is inconsistent with any suggestion that the original debt was thereby extinguished."

For the reasons given, we see no prejudicial or reversible error on the record.