BORDEN, INC. v. JAMES C. BROWER, T/A HARVEST MILLING
COMPANY

No. 1

(Filed 10 October 1973)

**Bills and Notes § 19; Evidence § 32— action on note — parol evidence
rule — method of payment — whole contract**

In an action to recover on a renewal promissory note given by
defendant to plaintiff, the parol evidence rule did not prohibit the
admission of evidence offered by defendant to prove that two cus-
tomers executed notes to plaintiff for merchandise sold to them by
plaintiff's agent, that contemporaneously with the signing of defend-
ant's original note defendant and plaintiff's agent agreed that the
note would include the amounts of the customers' notes for bookkeep-
ing purposes only but that defendant would not be liable for the pay-
ment of such amounts, that those notes have not been paid, and that the
amounts of those notes were included in each renewal note given by
defendant to plaintiff, including the note in question, since the parol
evidence rule is not violated (1) by showing method of payment and
discharge contemplated by the parties or (2) by showing the whole of
a contract, only a part of which is in writing, when the contract is not
required by law to be in writing and the unwritten part does not con-
flict with the written.

Chief Justice BOBBITT concurring in result.

Justice SHARP joins in the concurring opinion.

ON *certiorari* to review the decision of the Court of Ap-
peals, reported in 17 N.C. App. 249, 193 S.E. 2d 751 (1973),
which affirmed summary judgment for plaintiff entered by
*Cohoon, J.,* at the 9 August 1971 Session of PASQUOTANK Su-
perior Court.

Plaintiff seeks to recover $7,705.94 with interest, which
plaintiff alleges is due on a negotiable promissory note executed
by defendant on or about 25 July 1969, payable to the order of
plaintiff on 1 December 1969. Plaintiff alleges that the note
was in the original principal amount of $11,970, and that de-
fendant's payments of principal and interest on the note have
left a past due balance of $7,705.94, plus interest at six percent
per annum from 25 July 1970.

Defendant denies that he is indebted to plaintiff in any
amount, and by way of an affirmative defense alleges that from
1963 through 1969 he was a salesman for plaintiff and its
predecessor corporations (hereinafter referred to simply as
plaintiff), and that from 1963 through 1967 Owen Messersmith

served as the sales representative and agent for plaintiff for the purpose of making sales and credit arrangements in North Carolina. In 1963 L. C. Parrish contacted plaintiff about purchasing some fertilizer products, and defendant at that time advised both Parrish and agent Messersmith that he was unable to carry an account the size of Parrish's needs and demands. Messersmith informed defendant that as plaintiff's agent he would make the sales to Parrish, would accept a note and collateral directly from Parrish to plaintiff, and that plaintiff would be solely responsible for the collection of the Parrish account. Pursuant to this agreement, on 12 July 1963 Messersmith made the fertilizer sales on credit to Parrish and secured from Parrish a note in the amount of $5,152.91 with a chattel and agricultural security agreement in favor of plaintiff.

Defendant alleges a similar transaction occurred in 1967. That year, Curtis Scott approached defendant about purchasing some fertilizer products under a credit arrangement. Based on his knowledge of this customer, defendant refused to sell to Scott on credit. Messersmith, however, after making a credit check on Scott, made sales directly to Scott and procured a secured note dated 18 July 1967 in the amount of $1,589.81 from Scott payable to plaintiff. Again, defendant alleges, plaintiff through its agent Messersmith agreed to be solely responsible for the collection of this account.

Defendant's answer further alleges that plaintiff's agent Messersmith requested defendant's permission to run the Parrish and Scott notes under defendant's account for bookkeeping purposes only. Defendant agreed that he could do so, but it was further agreed that Messersmith would be liable for the collection of the Parrish and Scott notes, and that in no event would defendant be liable for the amounts of these notes, and that although the amounts of these notes would be included in the annual settlement notes given by defendant to plaintiff as a part of the same plan of bookkeeping, these amounts would be credited on defendant's account with plaintiff. Defendant further alleges that as a result of this agreement, each year thereafter the amounts of these notes were included in the note executed by defendant to plaintiff, and that defendant "is entitled to an accounting with the plaintiff on all transactions for the years 1963 through 1969 inclusive and is entitled to credits in the amounts of $5,152.91 and $1,589.81, representing the Parrish and Scott accounts."

By way of counterclaim, defendant further alleges that in the event he is indebted to plaintiff in any amount on the note alleged in the complaint, then he is entitled to judgment against plaintiff in the amount of the Parrish and Scott notes, plus interest, first, because of plaintiff's breach of its contract to accept and assume responsibility for the collection of the Parrish and Scott notes without recourse against defendant; and secondly, because of plaintiff's breach of its contract to give defendant's account credit for the merchandise purchased by Parrish and Scott pursuant to plaintiff's agreement with defendant. :

Plaintiff replied to defendant's counterclaim, alleging among other things that a written agency contract—dated 16 October 1959 and executed by defendant and by Messersmith for plaintiff under which defendant had been appointed an agent for the sale on commission of plaintiff's fertilizer products—controlled the business practices and procedures between plaintiff and defendant, and that this agency contract was a bar to defendant's counterclaim and defenses; that unless authorized by plaintiff and agreed upon by defendant, all sales by Messersmith to customers in defendant's sales territory were on or for defendant's account, with defendant receiving commissions in connection with such sales; that the amounts representing the Parrish and Scott notes were debited by plaintiff to defendant's account with defendant's full knowledge and consent and that defendant had made payment for such amounts in full; that plaintiff's agent Messersmith was without authority to bind plaintiff to any financial or credit arrangement with defendant not approved by Messersmith's superiors; and that defendant was aware or should have been aware of such limitation on Messersmith's authority; and finally that annual settlements between the parties for each of the ten years prior to the execution of the note in suit were a bar to defendant's counterclaim and defenses. Plaintiff further alleges that annually in July from 1959 to 1969 plaintiff and defendant met for the purpose of settling their account for the previous fiscal year. On each such occasion plaintiff and defendant examined their account records, determined the credits to which each was entitled, and then agreed upon a balance as the amount owing between the parties for the prior fiscal year, together with any amount unpaid from the previous year's settlement. At each such settlement, the balance agreed upon was in plaintiff's favor, and defendant executed under seal and delivered to plaintiff his negotiable promissory note payable to the order of plaintiff in the

amount of such balance. Plaintiff further alleges that the Parrish and Scott notes were debited against defendant's account in at least two such settlements prior to 1969, and that defendant knowingly executed notes to plaintiff encompassing the Parrish and Scott obligations; that defendant had paid plaintiff in full for the Parrish and Scott notes prior to defendant's execution of the 1969 note involved in this suit, and that this 1969 note encompassed only new purchases by defendant from plaintiff since the date of the 1968 settlement.

On the day plaintiff filed its reply, plaintiff also moved for summary judgment, supporting this motion by portions of defendant's deposition and by an affidavit of P. J. Scearce, plaintiff's branch manager. In the portions of defendant's deposition offered in evidence by plaintiff, defendant admits that he executed the note in suit at the time of the 1969 settlement with plaintiff and that the amount of the note, $11,970, reflected the amount that plaintiff's records showed defendant owed at that time after striking a balance between them as they had done in the past. The affidavit of Mr. Scearce fully supports plaintiff's allegations set forth in its reply to defendant's counterclaim with respect to the annual settlements of plaintiff and defendant from 1959 to 1969, and states that there is a balance of $7,705.94 due on defendant's note, with interest from 25 July 1970. Additionally, it specifically states that defendant had paid plaintiff in full for the Parrish and Scott notes before the 25 July 1969 note was executed, the Parrish note having been paid on 20 January 1966 and the Scott note on 5 March 1969.

In opposition to plaintiff's motion for summary judgment, defendant offered his verified answer and counterclaim, two affidavits of plaintiff's agent Messersmith, his own affidavit and portions of his own deposition, and an affidavit of Hassell Hollingsworth, a farmer who had dealt with defendant and Messersmith in the past. The affidavits of Messersmith fully corroborate defendant's allegations with respect to the details involved in the Parrish and Scott transactions. Messersmith's affidavit further states that he asked defendant to list the Parrish and Scott notes in defendant's account with plaintiff—as an indebtedness by defendant to plaintiff—for bookkeeping purposes only, with the distinct understanding that defendant would not be personally liable and responsible for such notes, but to the contrary would receive credit for the notes; that plaintiff accepted full responsibility for the collection of these notes which

were made payable directly to plaintiff; that these arrangements were well-known and approved by plaintiff's company officials—including P. J. Scearce—and that it was only after Messersmith left the employment of plaintiff in March of 1969 that any company official raised any objection to Messersmith's having accepted the Parrish and Scott notes; that defendant signed the settlement notes annually in reliance on his agreement with Messersmith that defendant would receive credit without recourse for the Scott and Parrish notes; that Messersmith represented to defendant that as plaintiff's agent he had authority to accept notes from individual customers; and finally that written agency contracts between plaintiff and defendant were supposed to be executed annually, but that after 1959 no such contracts were executed and instead oral agreements, practice, and procedure determined the parties' agency relations.

Defendant's affidavit states that none of the settlement notes he gave plaintiff were ever fully paid; that defendant continued to make purchases from plaintiff and continued to make payments on merchandise he was currently purchasing; that at no time had defendant "paid in an amount sufficient to pay for all merchandise purchased currently and to date and including the notes which covered the Parrish and Scott indebtedness"; and that the note in suit "executed at the time of the 1969 settlement did not cover entirely new purchases of merchandise after the time of the July, 1968 settlement, but rather covered the indebtedness under the Parrish and Scott notes."

Hollingsworth's affidavit states that he is a farmer in defendant's sales area, that Messersmith had extended credit directly from plaintiff to him and had taken notes from him payable to plaintiff, and that his own dealings with Messersmith had never been questioned or challenged by plaintiff.

After moving for summary judgment, plaintiff moved to strike defendant's evidence on the ground that such evidence was irrelevant, immaterial, and inadmissible because of the parol evidence rule. The court allowed this motion and entered summary judgment for plaintiff, stating in the judgment that the following facts appeared without genuine or substantial controversy: "(1) On or about 25 July 1970, for value received, defendant executed under seal and delivered his negotiable promissory note payable to the order of plaintiff in the sum of $11,970, plus interest. . . . (2) After giving defendant credits to which he is entitled, the balance owing on said note is $7,705.94, plus

interest thereon at 6% per annum from 25 July 1970." The court concluded "as a matter of law that the material evidence in support of defendant's counterclaim and defense is inadmissible; that disregarding such evidence, there is no genuine issue as to any material fact and that plaintiff is entitled to summary judgment as a matter of law."

From the judgment entered, defendant appealed. The Court of Appeals, in an opinion by Judge Parker, affirmed. We allowed *certiorari* on 6 March 1973.

*H. Wade Yates for defendant appellant.*

*Leroy, Wells, Shaw, Hornthal & Riley by L. P. Hornthal, Jr., for plaintiff appellee.*

MOORE, Justice.

This appeal poses the sole question: Was defendant's evidence in support of his defenses and counterclaim admissible?

Plaintiff's evidence establishes a *prima facie* case for an unpaid balance on a promissory note under seal. Plaintiff contends that the material facts set forth in defendant's answer, deposition, and affidavits offered by defendant in opposition to plaintiff's motion for summary judgment were inadmissible in evidence because of the parol evidence rule, and that the trial court properly granted plaintiff's motion for summary judgment.

Affidavits filed in opposition to a motion for summary judgment "shall set forth such facts as would be admissible in evidence." G.S. 1A-1, Rule 56(e). If the pleadings, affidavits, and deposition offered by defendant do not set forth facts that would be admissible in evidence because of the parol evidence rule, then such evidence was properly stricken, and since there remained no genuine issue as to any material fact, the court correctly rendered summary judgment for plaintiff. *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972); *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971).

The parol evidence rule in North Carolina was stated by Chief Justice Stacy in *Insurance Co. v. Morehead,* 209 N.C. 174, 183 S.E. 606 (1936), as follows:

"It is well-nigh axiomatic that no verbal agreement between the parties to a written contract, made before or

at the time of the execution of such contract, is admissible to vary its terms or to contradict its provisions. [Citing numerous cases.] . . .

"On the other hand, there are a number of seeming exceptions, more apparent than real perhaps, as well established as the rule itself. *Roebuck v. Carson,* 196 N.C., 672, 146 S.E., 708. . . ."

Chief Justice Stacy then sets out eight exceptions to the rule, citing numerous North Carolina cases for each exception. The third exception is that the parol evidence rule is not violated:

"[B]y showing mode of payment and discharge as contemplated by the parties, other than that specified in the instrument. *Bank v. Rosenstein,* 207 N.C., 529, 177 S.E., 643; *Kindler v. Trust Co.,* 204 N.C., 198, 167 S.E., 811; *Wilson v. Allsbrook,* 203 N.C., 498, 166 S.E., 313; *Stockton v. Lenoir,* 198 N.C., 148, 150 S.E., 886; *Bank v. Winslow,* 193 N.C., 470, 137 S.E., 320."

The sixth exception is:

"[B]y showing the whole of a contract, only a part of which is in writing, provided the contract is not one required by law to be in writing and the unwritten part does not conflict with the written. *Dawson v. Wright, supra* [208 N.C., 418, 181 S.E., 264]; *Henderson v. Forrest,* 184 N.C., 230, 114 S.E. 391; *Evans v. Freeman,* 142 N.C., 61, 54 S.E., 847."

Two excellent law review articles, one by Chadbourn and McCormick entitled "The Parol Evidence Rule in North Carolina," 9 N.C.L. Rev. 151 (1931), and a sequel by Dalzell, "Twenty-five Years of Parol Evidence in North Carolina," 33 N.C.L. Rev. 420 (1955), examine in depth this rule as applied in North Carolina. Chadbourn and McCormick offer the following as a concise and accurate statement of the rule: *"Any or all parts of a transaction prior to or contemporaneous with a writing intended to record them finally are superseded and made legally ineffective by the writing."* 9 N.C.L. Rev. at 152. Professor Stansbury, who is in accord with this statement of the rule, also notes:

". . . The execution of the final writing may be termed the 'integration' of the transaction. By it all prior and contemporaneous negotiations or agreements, whether oral or

written, are 'merged' into the writing, which thus becomes the exclusive source of the parties, rights and obligations with respect to the particular transaction or the part thereof intended to be covered by it.

"The parol evidence rule applies only to writings which relate to a transaction affecting the legal relations between two or more persons, and which are intended wholly or partly to supersede other negotiations and agreements between them. If such a writing is intended to supersede all other agreements relating to the transaction, it may be termed a total or complete integration; if it supersedes only a part, it is a partial integration. In the latter case, those portions of the transaction which were not intended to be superseded are legally effective and therefore may be shown by parol. . . ." 2 Stansbury's N. C. Evidence, Brandis Rev. §§ 251-52 (1973).

Although Professor Dalzell in his law review article is somewhat critical of the North Carolina rule as being too liberal, he does state that while some courts emphasize the protection of the written instrument from invasion, the emphasis in North Carolina is rather in the direction of giving the proponent of the oral agreement a chance to prove that it was made if he can, and that by so doing the North Carolina decisions may sometimes come closer to enforcing the contract that should be enforced than do the more conservative authorities.

Promissory notes are not generally subject to the parol evidence rule to the same extent as other contracts. Parties drawing such instruments tend to follow a rather definitely standardized form. If collateral terms and conditions had been agreed upon, they may be omitted from the note itself to insure its negotiability. Accordingly, it is rather common for a promissory note to be intended as only a partial integration of the agreement in pursuance of which it was given, and parol evidence as between the original parties may well be admissible so far as it is not inconsistent with the express terms of the note. See 3 Corbin on Contracts § 587, at 510 (1960); 2 Stansbury's N. C. Evidence, Brandis Rev. § 256 (1973); Dalzell, Twenty-five Years of Parol Evidence in North Carolina, 33 N.C.L. Rev. at 432-33 (1955).

The North Carolina rule in such cases was stated in *Evans v. Freeman,* 142 N.C. 61, 54 S.E. 847 (1906)—an often-cited

case in which parol evidence was admitted to show that a promissory note was to be paid only to the extent of proceeds received from the sale of patent rights in the maker's stockfeeder—as follows:

> ". . . [The parole evidence rule] applies only when the entire contract has been reduced to writing, for if merely a part has been written, and the other part has been left in parol, it is competent to establish the latter part by oral evidence, provided it does not conflict with what has been written. . . . In such a case there is no violation of the familiar and elementary rule we have before mentioned, because in the sense of that rule the written contract is neither contradicted, added to, nor varied; but leaving it in full force and operation as it has been expressed by the parties in the writing, the other part of the contract is permitted to be shown in order to round it out and present it in its completeness, the same as if all of it had been committed to writing.

> "The competency of such evidence for the purpose of establishing the other and unwritten part of the contract, or even of showing a collateral agreement made contemporaneously with the execution of the writing, has been thoroughly settled by the decisions of this Court. . . . Applying the rule we have laid down, it has been adjudged competent to show by oral evidence a collateral agreement as to how an instrument for the payment of money should in fact be paid, though the instrument is necessarily in writing and the promise it contains is to pay so many dollars. . . ."

Other promissory note cases involving the North Carolina method of payment and discharge exception to the parol evidence rule include: *Carroll v. Brown,* 228 N.C. 636, 46 S.E. 2d 715 (1948) (note to be paid out of profits of a partnership in which maker and payee were engaged) ; *Ripple v. Stevenson,* 223 N.C. 284, 25 S.E. 2d 836 (1943) (note to be paid out of rents and profits from an office building) ; *Insurance Co. v. Guin,* 215 N.C. 92, 1 S.E. 2d 123 (1939) (note to be paid out of commissions) ; *Bank v. Rosenstein,* 207 N.C. 529, 177 S.E. 643 (1935) (co-maker's liability on a note limited to the value of land covered by a deed of trust) ; *Galloway v. Thrash,* 207 N.C. 165, 176 S.E. 303 (1934) (note to be paid by crediting it against payee's anticipated share of maker's estate) ; *Trust Co. v. Wilder,* 206 N.C. 124, 172 S.E. 884 (1934) (note to be paid

out of proceeds of land when land was sold) ; *Kindler v. Trust Co.,* 204 N.C. 198, 167 S.E. 811 (1933) (note to be paid out of collateral held by payee and such payment to be credited to an endorser) ; *Wilson v. Allsbrook,* 203 N.C. 498, 166 S.E. 313 (1932) (note to be paid out of rents collected by maker) ; *Stack v. Stack,* 202 N.C. 461, 163 S.E. 589 (1932) (note to be paid out of proceeds of land) ; *Bank v. Winslow,* 193 N.C. 470, 137 S.E. 320 (1927) (note to be paid out of proceeds from sale of goods) ; *Quin v. Sexton,* 125 N.C. 447, 34 S.E. 542 (1899) (note to be paid out of proceeds of another note) ; *Kerchner v. McRae,* 80 N.C. 219 (1877) (bond to be credited with the proceeds from sale of cotton). See 12 Am. Jur. 2d, Bills and Notes § 1264 (1964) ; 30 Am. Jur. 2d, Evidence § 1061 (1967) ; Annot. 71 A.L.R. 548, 570-75 (1931) ; 2 Stansbury's N. C. Evidence, Brandis Rev. § 256 (1973) ; 3 Strong, N. C. Index 2d, Evidence § 32, at 651 (1967).

In the present case, according to defendant's evidence, customers Parrish and Scott executed notes to plaintiff for merchandise sold by plaintiff's agent to them. At the request of plaintiff's agent, a note from defendant to plaintiff included, for bookkeeping purposes only, the amount of these two notes. In no event was defendant to be liable for these amounts. The Parrish and Scott notes were made payable to plaintiff and were never assigned by plaintiff to defendant. Hence, defendant had no legal right to collect from Parrish and Scott.

This action is between the original parties to the note. When such an instrument is in the hands of a holder other than a holder in due course, this Court has permitted variance of its express terms by showing that it was to be enforced only on the happening of certain conditions, or only to the extent necessary to accomplish a certain purpose, or that it was payable only out of a certain fund, or that it was given as evidence of an advancement, or that it might be discharged by a method of payment or performance different from that stated in the writing. *Insurance Co. v. Morehead, supra,* and above cited cases. See also 2 Stansbury's N. C. Evidence, Brandis Rev. § 256 (1973) ; 3 Strong, N. C. Index 2d, Evidence § 32, at 651 (1967).

The Court of Appeals, in affirming the trial court's exclusion of defendant's evidence, states that although it is making no attempt to reconcile all prior North Carolina decisions, its decision is consistent with the more recent North Carolina cases

on this point. In support of this statement the Court of Appeals cites *Bank v. Slaughter,* 250 N.C. 355, 108 S.E. 2d 594 (1959), and *Vending Co. v. Turner,* 267 N.C. 576, 148 S.E. 2d 531 (1966). In *Bank v. Slaughter* plaintiff bank sought to recover the balance due on a note that had been executed by two individual defendants and a corporation. The controlling interest in the corporation had been purchased by the individual defendants with a portion of the proceeds of the loan from plaintiff bank. At the time of the suit the corporation had been adjudged bankrupt and the individual defendants defended on the ground that, pursuant to an oral agreement with plaintiff, the corporation—rather than they themselves—was liable for the balance due on the note. Defendants' parol evidence concerning this alleged agreement tended to show that prior to the execution of the note, plaintiff agreed that the liability of the two defendants would be limited to that portion of the note that was loaned to defendants individually to purchase the controlling interest of the corporation, and that the corporation alone would be liable for the balance of the loan. This testimony was excluded by the trial court, and this Court affirmed by holding that the promise contained in the note to pay certain amounts "could not be contradicted or destroyed by parol testimony that the makers would not be called upon to pay monies loaned pursuant to the contract." 250 N.C. at 357, 108 S.E. 2d at 596.

Professor Stansbury, after discussing North Carolina's various exceptions to the parol evidence rule noted above, cites *Bank v. Slaughter* for the general proposition that in spite of the liberal approach reflected in many North Carolina parol evidence rule cases, it is not "permissible to show an agreement that the maker should not be liable in any event." 2 Stansbury's N. C. Evidence, Brandis Rev. § 256, at 252 (1973). Notwithstanding Professor Stansbury's suggested distinction between this and prior North Carolina cases, we have some difficulty in distinguishing this case from the long line of North Carolina cases holding that a parol agreement as to mode of payment or discharge is competent as between the parties. At least two writers have observed that although the parol evidence rule in this situation has not always been consistently applied in North Carolina, *Bank v. Slaughter* seems clearly irreconcilable with the rule laid down by this Court in previous cases. Case Law Survey, Inadmissibility of Contemporaneous Parol Agreement to Vary Terms of Loan, 38 N.C.L. Rev. 543 (1960); Case Law Survey, Parol Evidence Rule, 38 N.C.L. Rev. 540 (1960). An-

other writer suggests that the case may possibly indicate a retreat from this Court's previously well-established position. 2 Stansbury's N. C. Evidence, Brandis Rev. § 256, at 252, n. 82. Despite any possible conflict, however, we hold that in the instant case North Carolina's long-established rule admitting parol evidence to show method of payment or discharge is in full force and effect, and *Bank v. Slaughter* is not controlling.

Neither is the second case relied on by the Court of Appeals, *Vending Co. v. Turner, supra,* controlling in the instant case. *Vending Co. v. Turner* primarily involved the principle that payment or the right to a credit upon a note is an affirmative defense that must be pleaded. Although that opinion does contain a general statement to the effect that a promise set forth in the note could not be contradicted or destroyed by parol testimony, the opinion actually affirmed a judgment that embodies the mode of payment or method of discharge exception to the parol evidence rule. In that case plaintiff sued on defendant's promissory note. Defendant defended on the ground that at the time his note was made he and plaintiff orally agreed that certain payments received by plaintiff from third parties in the form of "promotion money" would be credited upon defendant's note as if paid by defendant. The jury found that this oral agreement collateral to the note itself was made, and consequently that defendant was entitled to credits on the principal amount of the note for the amount of "promotion money" received by plaintiff. This Court, in an opinion by Justice Lake, affirmed the jury's findings.

The original note in this case given by defendant to plaintiff was renewed from time to time. Defendant offered evidence, which was stricken, that each renewal contained the amounts of the Parrish and Scott notes. If this is true, the renewals did not operate as a discharge of the original note. Plaintiff would be bound by the parol contemporaneous agreement made with defendant through plaintiff's agent at the time of the original note as to the mode of payment of the liability of defendant. *Bank v. Rosenstein,* 207 N.C. 529, 177 S.E. 643 (1935) ; 1 Strong, N. C. Index 2d, Bills and Notes § 14 (1967).

Applying the more liberal rule generally followed in cases involving promissory notes and the two well-established North Carolina exceptions to the parol evidence rule as set out by Chief Justice Stacy in *Insurance Co. v. Morehead, supra,* we hold that as between the original parties to the note in question

the evidence offered by defendant was admissible to prove that he and plaintiff through plaintiff's agent, contemporaneously with the signing of the original note, agreed that defendant was entitled to credit on his own note for the amounts of the Parrish and Scott notes, that in no event would defendant be liable for the payment of the amounts of these notes, that these notes had not been paid, and that the amounts of these notes were included in each renewal note given by defendant to plaintiff, including the note involved in this action. Such evidence is sufficient to raise a genuine issue as to a material fact to be determined at trial. *Schoolfield v. Collins,* 281 N.C. 604, 189 S.E. 2d 208 (1972).

For the reasons stated, the decision of the Court of Appeals is reversed. The cause is remanded to that court with direction to vacate the summary judgment and to remand the cause to the Superior Court for trial in accordance with this opinion.

Reversed and remanded.

Chief Justice BOBBITT concurring in result.

I agree that the record does not support the entry of summary judgment for plaintiff. However, I do not agree that the cited cases holding that parol evidence is admissible to show an agreement that payment is to be made solely in a specific manner or out of a specific fund constitute authority for holding competent the testimony of Brower and Messersmith. Nor am I prepared to overrule or modify our decision in *Bank v. Slaughter,* 250 N.C. 355, 108 S.E. 2d 594 (1959).

Here, more than one writing is involved. The record shows that the Parrish and Scott notes and agricultural security agreements were made to Smith-Douglass, plaintiff's predecessor; that neither Parrish nor Scott paid any part of these obligations; and that $7,705.94, the amount of the Parrish and Scott notes, was included in the amount of the notes executed from time to time by Brower to plaintiff or its predecessors. The record is silent concerning the efforts, if any, made either by plaintiff or by defendant to collect the Parrish and Scott notes.

There was evidence that the Parrish and Scott documents "stayed in [Brower's] drawer there," as directed by Messersmith. Whether plaintiff or Brower now has physical possession of the Parrish and Scott documents seems unimportant. The

important point is that indebtedness of $7,705.94 is evidenced both by Brower's note to plaintiff and by the notes of Parrish and Scott to plaintiff.

Under these circumstances, I am of the opinion that the testimony of Brower and of Messersmith was admissible on the ground that it was competent to explain the relationship between the Brower note and the Parrish and Scott notes.

Justice SHARP joins in this concurring opinion.