NORTH CAROLINA NATIONAL BANK v. H. L. GILLESPIE, t/a
H. L. GILLESPIE'S USED CARS

No. 7517DC632

(Filed 7 January 1976)

1. **Bills and Notes § 20— action on notes — oral agreement inconsistent with terms of notes — summary judgment**

    Summary judgment was properly entered for plaintiff bank in its action to collect demand notes executed by defendant where defendant testified that the notes were executed as security for a floor plan agreement for defendant's used car business, and that he had an oral agreement with the bank's former president that the bank would apply the fair market values of cars floor planned before calling upon defendant for payment, but the evidence showed that the bank's former president retired in 1966, the notes were executed in 1973 and 1975, no such agreement was made when the notes in question were executed, and the oral agreement was inconsistent with the terms of the notes.

2. **Judges § 5— refusal of judge to disqualify himself**

    A district court judge did not err in refusing to disqualify himself in a bank's action to collect notes executed by defendant on grounds that the judge is a depositor with the bank and enjoys friendly relationships with its officers and employees, that a relationship of attorney and client between the judge and defendant's family had been terminated prior to the judge's election to the district court, and that the judge had prosecuted defendant when he was the solicitor of recorder's court, where the judge found as a fact that he had no prejudice or bias which would prevent him from acting impartially.

APPEAL by defendant from *Clark, Judge.* Judgment entered 19 May 1975, in District Court, SURRY County. Heard in the Court of Appeals 13 November 1975.

By this action plaintiff seeks to recover of defendant the principal sum of $15,113.09, payment for five demand notes executed by defendant to plaintiff as payee. Defendant, in his answer, denied that he had executed the notes. He counterclaimed

for the "sum of fifteen to twenty thousand dollars or such amounts as the evidence reveals that he is entitled to on his counterclaim" based upon his allegations that as a used car dealer he had "floor planned" automobiles to plaintiff and that as a part of the floor planning agreement plaintiff had promised to make certain rebate payments to him and that plaintiff had failed to make the payments as agreed.

Plaintiff moved for summary judgment and filed an affidavit of the senior vice-president of plaintiff who stated that he had been employed by the bank and its predecessor for 40 years and knew the signature of defendant, having handled many transactions for him. He further stated that he had examined the signature of defendant on the pleadings filed herein and compared it with the signature on the notes in question and was of the opinion that the signature on the notes in question was that of defendant. He further stated that he knew of his own knowledge that plaintiff had never entered into any agreement to pay any dealer rebates to defendant on any floor planning arrangement or on any note discounting arrangement.

In opposition to the motion defendant submitted the depositions of present or former officials of the bank and his own affidavit. D. C. Rector's testimony was that he had retired from the bank as of 1 January 1966, and had not had any active part in the business of the bank since his retirement, but that he had prior to that time done business with defendant. In his own affidavit defendant stated that he had been in the used car business for some 30 years in Mount Airy and for 12 to 15 of those years he had floor planned his automobiles with plaintiff and its predecessor, First National Bank of Mount Airy. He signed the notes which are the subject of this lawsuit, and they are secured by certain automobiles owned by defendant in his used car business. He stated that he had entered into a verbal agreement with plaintiff through its then president, Mr. Rector. With respect to the agreement, defendant stated:

> "That for the past thirty (30) years I have been in the used car and auto repair business, and that, more particularly for the last 12 to 15 years, I have co-endorsed notes and installment loan contracts with the First National Bank of Mount Airy when I sold the automobiles to my customers. That I had an agreement with Mr. D. C. Rector that he would floor-plan any used cars that I had at my lot, and that I would sign notes or any other security agree-

ments, including chattel mortgages and floor-plan agreements, if required by the bank, to be given to the bank to secure the automobiles floor-planned by me in my business.

I further had an agreement that I would receive one (1%) percent add-on dealer reserve after all contracts which I had floor-planned and customer sales of which I had endorsed to the First National Bank of Mount Airy were paid out. That this business relationship has continued, and that I still have outstanding contracts which have not been paid out by my customers in the First National Bank of Mount Airy, which has recently been purchased by the North Carolina National Bank. That it has been the business practice of myself and the First National Bank of Mount Airy that I endorse notes in the name of H. L. Gillespie's Used Cars, and that all of these notes have been demand notes. And that the consideration for the notes has been the money advanced for the purpose of floor-planning used cars on my lot. In addition to the notes, I have signed other floor-plan agreements in favor of the First National Bank of Mount Airy, and I am informed and believe that these security agreements contain therein other notes for the same amounts of money as set forth in the plaintiff's complaint. This is true for Note #8142, showing execution date of August 29, 1975, Note #8139, executed August 29, 1973, Note #8141, executed September 10, 1973, Note #8140, executed September 10, 1973, and Note #8138, executed September 15, 1973. That no consideration has ever been given to me by the First National Bank of Mount Airy for Notes #8138, #8139, #8140, #8141, and #8142, except to floor-plan automobiles to H. L. Gillespie's Used Cars. That the First National Bank of Mount Airy has made no effort to repossess any automobiles either before or after suit was filed in this action on August 8, 1974.

That I had an oral agreement with D. C. Rector, president of First National Bank of Mount Airy at the time of the execution of the notes and for 12 to 15 years prior thereto that the notes would be used only as security for the floor-plan agreement, and that D. C. Rector and I had an oral agreement as to the floor-plan and an oral agreement which added thereto and supplemented the notes signed by me. That I also had an oral agreement with D. C. Rector that

no demand for payment would be made until after the bank's remedies under the floor-plan agreement and other security instruments, which I was required to sign by the bank, had been exhausted. I further had an agreement and understanding that the cars floor-planned would stand good for the debt to the extent of their fair market value at the time any request was made by the bank for the payment of the notes. I am informed that my dealer reserve at the North Carolina National Bank would be in excess of $17,000.00, and more than enough to pay off all the notes that I had endorsed at the North Carolina National Bank. That I had an agreement with D. C. Rector that before demand would be made upon the notes without an opportunity to either pay the interest or renew the notes that the dealer reserve would be used to pay off the notes.

That I have never been paid any of the dealer reserve on the paid out contracts for the past 15 years, and that for the past approximately 12 years, I have endorsed on the average of about $65,000 to $75,000 worth of retail sales contracts to the First National Bank of Mount Airy, and that these contracts have been paid and that the bank still retains my one (1%) percent dealer reserve, plus interest, over this period of time. I never made a request for the dealer reserve since my business relationship with the First National Bank of Mount Airy was continuing in the same manner that it had been continuing for 12 to 15 years."

The court entered summary judgment for plaintiff on its motion and denied defendant's motion for summary judgment on his counterclaim retaining that portion of the litigation for trial. Defendant appealed.

*Folger & Folger, by Larry Bowman, for plaintiff appellee.*

*Franklin Smith for defendant appellant.*

MORRIS, Judge.

In the judgment entered, the court complied with the mandate of G.S. 1A-1, Rule 54(b), in providing that "this judgment is entered as a final judgment under Rule 54(b) of the North Carolina Rules of Civil Procedure in that there is no just cause for delaying the entry of this order."

[1]  A party moving for summary judgment " . . . must show
(1) that there is no genuine issue as to any material fact, and
(2) that the moving party is entitled to a judgment as a matter
of law." *Caldwell v. Deese,* 288 N.C. 375, 378, 218 S.E. 2d 379
(1975). "[A]ll inferences of fact from the proofs proffered at
the hearing must be drawn against the movant and in favor
of the party opposing the motion." 6 Moore's Federal Practice
(2d ed. 1971), § 56.15[3] at 2337. Nor does G.S. 1A-1, Rule 56,
authorize the court to find the facts and decide an issue of fact.
The court is authorized only to determine whether a genuine
issue as to any material fact does exist. Here we do not think
a genuine issue exists with respect to a material fact. Defend-
ant has testified that the bank agreed to set up a reserve ac-
count, that the notes would be used only as security for the
floor-plan agreement, that no demand for payment of the notes
would be made until after the bank's remedies under the floor
plan agreement and other security instruments had been ex-
hausted, that the cars floor planned would stand good for the
debt to the extent of their fair market value, that the dealer
reserve would be used to pay off the notes before the bank
would demand payment without defendant's having the oppor-
tunity either to pay the interest or renew the notes. However,
if such verbal agreements were made, they were made, accord-
ing to defendant's own statement, with Mr. Rector. It is un-
disputed that Mr. Rector retired from the bank in 1966. The
notes involved here were dated in 1973 and 1975. Defendant
relies on *Langston v. Brown,* 260 N.C. 518, 133 S.E. 2d 180
(1963), where the Court said, at 520:

> "If, at the time of the execution and delivery of the notes,
> the parties agreed that payment should be enforced only by
> a sale of the collateral, such an agreement would preclude
> personal liability on the part of the maker in an action
> between the parties, but this is a defense which must be
> interposed by answer unless it appears in the complaint
> itself." (Citations omitted.)

Here, of course, defendant did not raise the defense in his an-
swer, nor is that material here. The undisputed evidence is that
if an agreement was made, it was made with Mr. Rector prior
to 1966. There is no evidence of any such agreement at the time
the notes in question were executed and delivered. Nor does
the case before us come within the ambit of *Borden, Inc. v.
Brower,* 284 N.C. 54, 199 S.E. 2d 414 (1973). There the plain-

---

---

tiff brought action to recover the balance due on a note executed by defendant on 25 July 1969 bearing a specified due date of 1 December 1969. Defendant denied any indebtedness to plaintiff and by way of affirmative defense averred that the amount included certain notes of customers of plaintiff and defendant payable to plaintiff which had been run through defendant's books as a matter of convenience; that in 1963, an agent of plaintiff had sold the customers fertilizers though defendant had told the agent he could not carry an account that size; that the agent had agreed that plaintiff would be solely responsible for collecting the accounts but they would be merely carried on defendant's books as a bookkeeping entry. Defendant agreed to this, and each year in settling with plaintiff, the notes were included in defendant's account with plaintiff; that each year defendant gave plaintiff a note for the balance due after all transactions between plaintiff and defendant had been handled. The trial court allowed plaintiff's motion for summary judgment. We affirmed. In reversing this Court and remanding the case for trial, the Supreme Court noted at page 65 that:

> "The original note in this case given by defendant to plaintiff was renewed from time to time. Defendant offered evidence, which was stricken, that each renewal contained the amounts of the Parrish and Scott notes. If this is true, the renewals did not operate as a discharge of the original note. Plaintiff would be bound by the parol contemporaneous agreement made with defendant through plaintiff's agent at the time of the original note as to the mode of payment of the liability of defendant." (Citations omitted.)

The notes before us are demand notes. There is no evidence that they are renewal notes for the notes given at the time an agreement was entered into with Mr. Rector. On the contrary, defendant says they were given for the purpose of acquiring money with which to buy used cars.

The notes provide that should the bank deem the collateral insufficient, it could demand that defendant deposit additional collateral and, upon his refusal, could declare the notes due and collectible. They further provided that "upon the nonpayment of this note, or of any other of said liabilities, the said Bank, or the holder thereof, may sell the same (Collateral) at public or private sale. . . . " By the terms of the note the bank is not required to sell the automobiles before calling on the maker for payment. *Borden, supra,* states that parol evidence,

in some instances, may be admissible as to an agreement between the parties "so far as it is not inconsistent with the express terms of the note." Here the evidence of defendant that the bank *must* apply the fair market value of the cars to the note before calling upon defendant for payment is inconsistent with the terms of the note.

Defendant in his affidavit states that "I *am informed* that my dealer reserve at the North Carolina National Bank would be in excess of $17,000, and more than enough to pay off all the notes that I had *endorsed* at the North Carolina National Bank."

This statement would, of course, not be admissible in evidence. Even so, defendant relates the balance as being more than sufficient to pay customer's notes *endorsed* by him. This was the purpose of the reserve account according to all the evidence.

Affidavits filed in opposition to a motion for summary judgment "shall set forth such facts as would be admissible in evidence. . . . " G.S. 1A-1, Rule 56(e). If the matters stated in pleadings, affidavits, and depositions are not admissible in evidence, they should be stricken and not considered by the court. In this case, when this has been done, there does not remain a genuine issue of material fact. Defendant has admitted the execution of the notes. Plaintiff has established a prima facie right to payment. Defendant has not shown, by competent admissible evidence, a valid defense to the payment allegedly due. The court correctly entered summary judgment for plaintiff.

[2] Defendant, on the day of hearing, filed a motion praying that the court disqualify himself because of the court's alleged "prejudice and bias toward the defendant" resulting from an other than amicable termination of attorney-client relationship between the court and defendant's family and further because the court is a depositor with plaintiff and enjoys friendly relationships with its officers and employees. The court entered an order denying the motion. He found as facts that the relationship of attorney and client prior to his being elected district court judge ended amicably; that he did prosecute defendant when he was the duly elected solicitor of Mount Airy Recorder's Court but that it was his duty to prosecute all persons charged with violation of the criminal law and he had no personal feelings about the case at all; that he and his wife had funds on

deposit with plaintiff in a joint account and that he does enjoy the friendship of certain officers and employees of plaintiff but his impartiality in any decision to be made in the case would not be affected by either the fact of the funds on deposit or his friendship with officers and employees of the plaintiff. We fail to find prejudicial error in this facet of defendant's appeal. Obviously a judge who has formerly been a solicitor or prosecutor will have litigants before him who have previously been defendants on his criminal docket. Without more, this is not sufficient to require disqualification. Nor is the fact that the judge is a depositor in a bank which is a party to an action before him, standing alone, sufficient to require disqualification. The court found as a fact that he had no prejudice or bias which would prevent his acting impartially. We assume, of course, that the court is a person of high integrity and will act impartially in the determination of any controversy before him. Nothing in this record has convinced us otherwise. While the judgment entered might be construed to indicate a misconception of the office of summary judgment, the record does not indicate a lack of integrity or impartiality. Defendant's assignment of error as to this portion of his appeal is overruled.

The court's action in entering summary judgment for plaintiff is

Affirmed.

Judges VAUGHN and MARTIN concur.