On 8 May, 1931, an order was signed substituting Gurney P. Hood, Commissioner of Banks for John Mitchell, Chief State Bank Examiner, and W. M. York as liquidating agent of the Bank of Union, as party defendant. Public Laws 1931, chap. 243, sections 3 and 4.
W. S. Blakeney was president of the Bank of Union, brother-in-law of J. E. Stack and executor of his will. J. E. Stack died 11 May, 1929, leaving plaintiff his widow and the following children, heirs at law: A. M. Stack, Jr., Rosa G. Huey, Alice L. Joyce, E. B. Stack, Warren Stack, Jr., and Frances Stack, the latter two being minors. Upon the evidence and the charge of the court, the jury answered the issues submitted to them, as follows:
"1. Was the deed by J. E. Stack and wife to E. B. Stack, Amos M. Stack, Jr., Alice Joyce and Rosa Huey, dated 8 June, 1927, conveying the Davis-Williams Store property, and the deed of trust by said *Page 463 
grantees to W. S. Blakeney, trustee, of the same date and on the same property, executed for the purpose of enabling J. E. Stack to secure a further loan from the said Bank of Union to enable said bank to get real estate security for such loan, as alleged in the pleadings? Answer: Yes.
2. If so, did E. B. Stack, Amos M. Stack, Jr., Alice Joyce and Rosa Huey, at the instance of the Bank of Union, through its president, take title to said property and execute the deed of trust thereon to W. S. Blakeney, trustee, for $21,240, as an accommodation to J. E. Stack, their father, and for the benefit of said bank, without any consideration or benefit to them, as alleged in the pleadings? Answer: Yes.
3. If so, was said conveyance in effect and in reality an indirect mortgage by J. E. Stack on his property to W. S. Blakeney, trustee, for the Bank of Union, and so intended by the parties and by the president of said bank, as alleged in the pleadings? Answer: Yes.
4. Were the deeds by J. E. Stack and wife to E. B. Stack, Amos M. Stack, Jr., and T. W. Huey, dated 8 September, 1927, conveying the two warehouses, the Five Points property and the two houses and lots on Crow Street, and the deed of trust by said grantees to W. S. Blakeney, trustee, dated 12 September, 1927, and on the same property, executed for the purpose of enabling J. E. Stack to obtain a further loan from the Bank of Union and to enable said bank to get real estate security for such loan, as alleged in the pleadings? Answer: Yes.
5. If so, did E. B. Stack, Amos M. Stack, Jr., and T. W. Hucy, at the instance of the Bank of Union, through its president, take title to said property and execute the deed of trust thereon to W. S. Blakeney, trustee, for $20,000, as an accommodation to J. E. Stack and for the benefit of said bank, without any consideration or benefit to them, as alleged in the pleadings? Answer: Yes.
6. If so, was said conveyance in effect and in reality an indirect mortgage by J. E. Stack on his property to W. S. Blakeney, trustee for the Bank of Union, and at the instance of said bank, as alleged in the pleadings? Answer: Yes.
7. In what amount, if anything, are the defendants E. B. Stack, Amos M. Stack, Jr., and T. W. Huey indebted to the Bank of Union on account of the notes of 12 September, 1927, secured by deed of trust of that date? Answer: Nothing.
8. Was the deed of W. S. Blakeney and A. M. Stack, Sr., trustees for the estate of J. E. Stack, to E. B. Stack, Amos M. Stack, Jr., Alice Joyce and Rosa Huey, conveying the Davis-Williams property, and dated 26 February, 1930, for the purpose of raising money to apply on the debts of said estate of J. E. Stack, as alleged in the pleadings? Answer: Yes. *Page 464 
9. If so, were the deeds of trust given by said grantees to Thompson and Lohmann for $12,500, dated 12 March, 1930, and the deed of trust to W. S. Blakeney, trustee, for $19,520 and dated 15 March, 1930, executed in pursuance of such purpose for the accommodation of the estate of J. E. Stack and for the benefit of the Bank of Union, and without consideration or benefit to said grantors in said deed of trust, as alleged in the pleadings? Answer: Yes.
10. In what amount, if any, are the defendants, E. B. Stack, Amos M. Stack, Jr., T. W. Huey, Alice L. Joyce, Gilmer Joyce, Mary M. Stack, Rosa G. Huey and Ione M. Stack indebted to the Bank of Union on account of the notes dated 15 March, 1930, secured by deed of trust of same date? Answer: Nothing.
11. In what amount are the defendants, Amos M. Stack, Jr., E. B. Stack and T. W. Huey indebted to the Bank of Union on the note dated 27 December, 1929, and secured by deed of trust to J. F. Milliken, trustee, and chattel mortgage of that date? Answer: $7,268.57, with interest from 3 September, 1931."
Upon the coming in of the verdict, the defendant, Commissioner of Banks, moved that the same, except as to the last issue, be set aside and for a new trial on all issues except the last; motion denied and defendant, Commissioner of Banks, excepts and assigns error.
The following judgment was rendered by the court below:
"In the above entitled action, the jury having answered the issues in favor of the defendants, A. M. Stack, Jr., Mary M. Stack, E. B. Stack, Ione M. Stack, T. W. Huey, Rosa G. Huey, Gilmer Joyce, Alice L. Joyce, and in favor of the petitioner, Lillian Stack, as appears from the issues on file in this court:
Now, therefore, it is ordered, considered and adjudged by the court that the petitioner is entitled to dower in all the lands described in paragraph 6 of her petition in this cause; and it is further adjudged upon the verdict of the jury upon the issues submitted to them that in the allotment of her dower, and in fixing the valuation of the property that she is entitled to dower in, the jury is directed to take into consideration the value of all the lands described in paragraph 7 of the plaintiff's petition, but shall allot her dower out of the lands described in paragraph 6 of the petition;
And it further appearing to the court that the petitioner is entitled to dower in the rents derived from the aforesaid property since the executor ceased to pay her under the terms of the will of J. E. Stack, it is considered and adjudged by the court that Lillian Stack is entitled to one-third in value of the rents collected out of the property of J. E. Stack described in paragraph six and seven of the plaintiff's petition *Page 465 
from 4 April, 1930, until the allotment of her dower, less the sums of $50 paid to her on 6 September, 1930, and $50 paid to her on 2 October, 1930.
For the purpose of ascertaining the amount of said rents that would be due the petitioner, the clerk of this court will hear evidence and ascertain the amount that will be coming to her out of the rents of her said husband's estate since the executor ceased to pay her under the terms of the will of J. E. Stack, deceased; and W. S. Blakeney, executor and trustee for the estate of J. E. Stack, is hereby ordered and directed to pay to the petitioner the amount found to be due her by the clerk of this court.
It is further ordered, considered and adjudged that the Commissioner of Banks shall take nothing by his cross-action against the defendants T. W. Huey, Amos M. Stack, Jr., Alice L. Joyce, E. B. Stack, Mary N. Stack, Gilmer Joyce, Ione M. Stack, and Rosa G. Huey, except the Commissioner of Banks shall recover of Amos M. Stack, Jr., E. B. Stack and T. W. Huey the sum of $7,268.57, with interest thereon from 3 September, 1931, due by deed of trust and chattel mortgage as set out in the pleadings, and for the purpose of enforcing collection on the notes secured by the said deed of trust and chattel mortgage, J. F. Milliken is hereby appointed commissioner and trustee to make sale of such property and at such time as he may see proper and report the proceedings of such sale to this court.
It is further ordered and adjudged that the costs of this action be taxed by the clerk of this court to be paid by the defendant Commissioner of Banks. This 8 September, 1931. T. B. FINLEY, Judge Presiding."
To the signing of the foregoing judgment, the defendant Commissioner of Banks, excepts and assigns error.
The exceptions and assignments of error and necessary facts will be set forth in the opinion.
The issues above outline and are determinative of the controversy.
At the close of plaintiff's evidence and at the close of all the evidence, the defendant Commissioner of Banks, made motions for judgment as in case of nonsuit. C. S., 567. The motions were overruled and in this we see no error. *Page 466 
We think that all the exceptions and assignments of error made by the defendant Commissioner of Banks can be considered under the one made above to the signing of the judgment in this action, and in this respect we can see no error on the record.
We think the main question of law involved in this controversy: In an action between the payee and maker of a note, is parol evidence admissible to establish an agreement between the maker and payee creating a particular mode of payment? We think so under the facts and circumstances of this case.
J. E. Stack was a director in the Bank of Union, and had been from the organization of the bank, some 27 years, until his death 11 May, 1929, during that period W. S. Blakeney, his brother-in-law, was the president of the bank. Stack was a large dealer in spot cotton, and had valuable real estate in the town of Monroe, N.C. but he had become deeply indebted to the bank, and on 8 June, 1927, owed said bank some $80,000. He was then an old man — some 75 years of age. At the time his real estate was more than sufficient to pay the indebtedness. He was over the limit allowed by law to be borrowed from the bank, and the bank examiner had notified the president, W. S. Blakeney, that Stack had to be held to the limit allowed by law and had to reduce his indebtedness.
It was contended by the heirs at law of J. E. Stack, who are involved in this controversy, and plaintiff, the widow of J. E. Stack, that the conveyances from J. E. Stack and herself of the lands in controversy in this action to the said heirs at law of J. E. Stack, and from them to W. S. Blakeney, trustee, was a makeshift or means of helping the Bank of Union, engineered by its president Blakeney, and they were merely a conduit. No consideration passed and no liability was to attach to the heirs at law of J. E. Stack, and the whole matter was arranged and fixed up by the president of the bank, Blakeney, for the purpose of complying with the law on account of the excess borrowed from the bank by J. E. Stack. It was an indirect mortgage from J. E. Stack to the Bank of Union, the heirs of J. E. Stack never acquired any beneficial interest in the lands. The heirs at law were to assume no liability, but the indebtedness to the bank was to be paid out of the land. The said heirs at law of J. E. Stack had nothing to do with drawing or recording the deeds to them or the conveyances from them to W. S. Blakeney, trustee, and others. They never saw the deeds to the lands, nor took possession or had any control of the lands; never contracted to buy the lands; received no rents or profits; paid no taxes on the lands. J. E. Stack, until his death, had custody and control of the lands and after his death Blakeney had control, and repairs were made to *Page 467 
the property by Blakeney. It was well understood by the parties to the entire transaction that the makers were not to be responsible, but it was J. E. Stack's debt and he was to remain liable therefor and he was the beneficial owner of the lands. His heirs at law were mere agents for a particular purpose. They held the legal title for the particular purpose, and J. E. Stack was the beneficial owner of the equity in the lands.
A. M. Stack testified, in part: "Mr. Blakeney asked we children to sign this deed and execute mortgages to the bank in order to reduce my father's indebtedness as well as help the bank, because he was being pressed by the bank examiners to reduce his notes. Q. Did Mr. Blakeney say anything relative to whether or not you would be bound by the execution of those notes? A. Yes, sir. Q. What did he say? A. He said that the property could be later transferred back to the estate; that it was just a method of using our names to get money for the Bank of Union and for my father's notes."
The proceeds were applied on J. E. Stack's indebtedness to the bank. A. M. Stack testified further: "Q. Mr. Stack, has anybody ever called on you to pay these notes or the interest on the note? Answer: No, sir; I have never received a statement from the Bank of Union that we owed any money on it. Q. Mr. Stack, did you get anything of value by reason of signing these notes? Answer: No, sir; I have never received or given anything of value."
Blakeney testified, in part: "The transaction was not made to deceive anybody; I was acting in a dual capacity — as executor and president of the bank and I thought my first duty was to the bank and I wanted to do the equitable thing all around, not only to the bank but to the heirs, give them a chance. . . . All the indebtedness of the said J. E. Stack to practically all the creditors except the Bank of Union has been paid with the exception of some small bills. . . . I did not tell the signers of these notes (said J. E. Stack's children) that they would not be held personally liable for the payment thereof. I told them the property wouldstand between them and any other liability; that I thought the property would be ample to take care of it and I did not tell them that they would not be personally liable."
A. M. Stack, Jr., testified, in part: "Q. Mr. Stack, Mr. Blakeney testified this morning that he told you it would stand between you and personal liability on the note? Answer: Yes, sir; he certainly did. Q. What else did he say to you? Answer: He said the property would stand for itself. Q. Did he tell you that at the time you executed both of these notes of 12 September? Answer: Yes, sir. Q. Did you communicate that to your brothers and the other defendants in this case? Answer: Yes, sir." *Page 468 
The above testimony of A. M. Stack, Jr., and like testimony of other witnesses, in regard to all the transactions, was objected to on the ground that "parol testimony cannot be admitted to contradict, add to or vary a written contract in the absence of fraud, ignorance, mistake or other available defense warranting a rescission or cancellation." Miller v.Farmers Federation, 192 N.C. at p. 146.
We think the testimony objected to competent (exceptions and assignments of error 1 to 191 inclusive) and the doctrine laid down in Evans v.Freeman, 142 N.C. at p. 64-5 applicable: "But this rule applies only when the entire contract has been reduced to writing, for if merely a part has been written, and the other part has been left in parol, it is competent to establish the latter part by oral evidence, provided it does not conflict with what has been written. . . . Numerous other cases have been decided by this Court in which the application of the same principle has been made to various combinations of facts, all tending, though, to the same general conclusion that such evidence is competent where it does not conflict with the written part of the agreement and tends to supply its complement or to prove some collateral agreement made at the same time."
In Greene v. Bechtel, 193 N.C. at p. 98, Stack, J., charged the jury, as follows, which was sustained by this Court: "When a contract is written, the law will not allow it to be altered, varied from that, or contradicted by parol evidence. When they put their contract in writing, that is the contract, but when a part of the contract is written and a part of it is in parol or verbal, and the verbal part does not alter, vary or contradict the written part, then the party claiming that parol agreement may show it by parol evidence."
In Bank v. Winslow, 193 N.C. at p. 473, the law is thus stated: "In Brown on Parol Evidence, sec. 117, it is held that `parol evidence is admissible to show an agreed mode of payment, and discharge other than that specified in the bond.' And in Typewriter Co. v. Hardware Co., 143 N.C. 97, it was held that when a promissory note is given, payable in money, parol evidence may be received tending to establish as a part of the contract a contemporaneous agreement that a different method of payment should be accepted," citing numerous authorities.
In Justice v. Coxe, 198 N.C. at p. 265, it is said: "Parol evidence offered by defendant for the purpose of showing all the terms of the contract between plaintiff and defendant, with respect to the transaction of which the execution of the notes was only a part, was admissible and competent for that purpose. Crown v. Jones, 196 N.C. 208, 145 S.E. 5." *Page 469 
On this record in what is written and what is in parol we can see no "total inconsistency." Garland v. Improvement Co., 184 N.C. 551; Exum v.Lynch, 188 N.C. 392 (in same case see, also, term "consideration" that is sufficient to support a promise). Watson v. Spurrier, 190 N.C. 726;Miller v. Farmers Federation, 192 N.C. 144; Hite v. Aydlett, 192 N.C. 166;Fertilizer Co. v. Eason, 194 N.C. 244; Smith v. Trust Co., 195 N.C. 183;Roebuck v. Carson, 196 N.C. 672; 20 A.L.R., 479(n); Hill v.Insurance Co., 200 N.C. 502.
The Parol Evidence Rule in North Carolina is learnedly discussed by James H. Chadbourn and Dean Charles T. McCormick, in N.C. Law Review, February, 1931, p. 151 et seq.
On the entire record we see no prejudicial or reversible error. From the view we take of the law there was no error in the admission or rejection of testimony or the charge of the court below to the jury. In the issues submitted perhaps the phraseology should have been more exact, but they were, from the evidence, understood and determinative of the controversy. We think the charge on the whole complied with C. S., 564.
From the findings of the jury J. E. Stack had an equitable estate in the lands. His widow, the plaintiff, is entitled to dower. C. S., 4100. After a thorough consideration of this action and the evidence, we can see no such repudiation as calls for criticism on the part of appellant. The indebtedness of J. E. Stack to the bank was neither that of his widow, now the plaintiff in this action, nor that of his children. The widow and certain of the children of age, under the facts and circumstances of this case, did what was requested of them by the husband and father, in an effort to aid the adjustment of honest obligations to the bank, which was beyond the law limit allowed to one individual, and from the jury finding done in accordance with the demand of the president of the bank, and through his efforts. The children to this action are making no claim to the lands, the whole matter was without consideration and an accommodation for their father, and the transactions were in effect indirect mortgages of J. E. Stack by certain of his children, for the purpose of adjusting honest debts. The bank will get the land subject to the widow's dower. A father would hardly put a personal burden of his debts on his children as it was contended by appellant. The jury did not so find. For the reasons given, we see no error in the judgment of the court below.
No error. *Page 470