LARRY G. MOZINGO AND WIFE, KATHLEEN A. MOZINGO, AND RIVER-
DRIVE APARTMENTS, INC. v. NORTH CAROLINA NATIONAL
BANK

No. 763SC404

(Filed 20 Oocbter 1976)

1. **Evidence § 32; Bills and Notes § 19— method of payment of notes —
oral agreement — parol evidence rule**

   Evidence of an alleged oral agreement by defendant bank to renew
   plaintiffs' unsecured demand notes until payment could be made from
   proceeds of the sale of certain apartment projects would not contra-
   dict the terms of the demand notes and would be admissible to show
   the agreed upon method of payment of the notes; therefore, the
   trial court erred in dismissing plaintiff's claim for breach of the
   oral agreement on the ground that it violated the parol evidence
   rule.

2. **Rules of Civil Procedure § 12— striking of defenses — argument of
   legal principles applicable to claim for relief**

   Defendant's contention that the appellate court should not con-
   sider plaintiffs' argument that the trial court erred in striking cer-
   tain of their defenses because plaintiffs failed to argue the legal
   principles underlying a motion to strike defenses pursuant to G.S.
   1A-1, Rule 12(f) is without merit where plaintiffs argued the prin-
   ciples for Rule 12(b)(6), since the same tests apply to both rules.

3. **Bills and Notes § 19; Uniform Commercial Code § 27— oral agreement
   as to payment from certain proceeds — defense to note**

   An alleged oral agreement that a note be paid only out of the
   proceeds from the sale of certain apartment projects would be a de-
   fense to an action to recover a deficiency judgment on the note. G.S.
   25-3-305(2); G.S. 25-3-306(b).

4. **Bills and Notes § 19— action on note — lack of consideration — suffi-
   ciency of complaint**

   Plaintiffs' complaint was sufficient to raise the defense of lack
   of consideration to defendant bank's counterclaim on a $600,000 note,
   secured by deeds of trust, given by plaintiffs to defendant in lieu of
   $600,000 in outstanding unsecured notes on plaintiffs' $750,000 debt
   to the bank, where it alleged that the total outstanding debt of $750,-
   000 was not reduced, the time for payment was not extended, no more
   money was loaned, and the deed of trust on the new note was re-
   quired to satisfy defendant's bank examiners.

5. **Mortgages and Deeds of Trust § 19— constitutionality of foreclosure
   procedure — striking of allegations**

   The trial court did not err in striking plaintiffs' defense that
   the N. C. foreclosure procedure is unconstitutional under the decision
   of *Turner v. Blackburn*, 389 F. Supp. 1250 (W.D.N.C. 1975) because
   they had no opportunity for a hearing under G.S. 45-21.34 to assert
   defenses to the foreclosure since the *Turner* decision applies only

prospectively, and the foreclosure sale in question occurred more than a year before that decision.

**6. Bills and Notes § 20— breach of agreement to return note — genuine issue of fact**

Plaintiffs' verified complaint, when treated as an affidavit in opposition to affidavits filed by defendant bank, was sufficient to raise a genuine issue as to whether defendant breached an agreement to return to plaintiffs a note given as security for a $750,000 loan upon plaintiffs' payment to defendant of $125,000 of the loan.

APPEAL by plaintiffs from *Browning, Special Judge.* Judgment entered 11 February 1976 in Superior Court, PITT County. Heard in the Court of Appeals 22 September 1976.

The plaintiffs, Mr. and Mrs. Mozingo and their corporation, Riverdrive Apartments, Inc., filed a complaint against defendant, North Carolina National Bank (NCNB), for breach of contract and misrepresentation. NCNB, in turn, filed a counterclaim for a deficiency judgment on a note. The trial court dismissed all of plaintiffs' claims, either under Rule 12(b)(6) or Rule 56(c), Rules of Civil Procedure, and granted summary judgment for NCNB on its counterclaim. Plaintiffs appealed.

It appears from the pleadings and affidavits that plaintiffs developed and built homes and apartments. In 1969, plaintiffs began three new projects: the Country Club Apartments, Phase 2, in Greenville; the Park Area Apartments, Phases 1 and 2, in Washington, North Carolina; and the Mozingo Office Building, also in Washington (hereinafter "the projects"). Plaintiffs arranged permanent loan commitments with various banks, each of which took a deed of trust conveying the project it financed as security for the note given. In light of these commitments, plaintiffs arranged construction loans for all the projects with NCNB. NCNB knew that these loans exceeded by $750,000 the total of all permanent loans, but it took no security on plaintiffs' notes for the excess. Further, plaintiffs allege that NCNB orally agreed that these notes were to be paid only from proceeds received from the sale of the projects, and until the projects were sold, the notes were to be renewed.

On 29 November 1971, plaintiffs gave NCNB a $600,000 demand note, secured by second deeds of trust on the projects, in lieu of $600,000 in outstanding notes on its $750,000 debt. Plaintiffs allege that NCNB told them that the deeds of trust were needed to satisfy objections of their bank examiners, and that the new demand note was a device permitting them to

fluctuate the interest rate on the construction loans. According to plaintiffs' allegations, NCNB specifically agreed that the new note and securities would not alter the existing oral agreement whereby the notes were to be paid only out of proceeds from the projects.

At the same time that plaintiffs executed the $600,000 note, they also assigned to the bank other stocks and notes as security for the remaining $150,000 of the $750,000 debt. Among these notes was one for $104,457.54 made by G. D. Bell and his wife, payable to plaintiffs (hereinafter "the Bell collateral"), and secured by a deed of trust on another of plaintiffs' apartments, Country Club Apartments, Phase 1. Plaintiffs allege that NCNB orally agreed that this note, and other collateral, would be returned to plaintiffs upon payment of $125,000, but that, upon payment by plaintiffs of the $125,000 on 26 September 1972 the Bell collateral was not returned.

Plaintiffs completed their projects, but, because of the depressed real estate market, were unable to sell them. They made no profit operating the projects and, consequently, fell behind in payments both to NCNB and to their permanent lenders. On 11 January 1974, NCNB foreclosed its deed of trust and sold the projects at auction to satisfy plaintiffs' $600,000 demand note. NCNB was the only bidder and bought the projects for $348,851, subject to first mortgages amounting to $1,199,875. Plaintiffs allege that at the time of sale the fair market value of the projects was $2,055,000.

On 31 January 1974, plaintiffs filed a verified complaint against NCNB for breach of oral contracts underlying the $600,000 note and the Bell note. In an order filed 30 May 1974, the trial court concluded that plaintiffs' complaint failed to state a claim for which relief could be granted and dismissed pursuant to Rule 12(b)(6). The court did, however, grant plaintiffs leave to amend.

In their amended verified complaint, filed 2 July 1974, plaintiffs alleged three causes of action, in pertinent part as follows:

I. First Cause of Action—Breach of Contract

1. In 1971, plaintiff and defendant entered into an oral contract, the terms of which are as follows:

(a) Defendant agreed to loan to plaintiffs funds necessary for the completion of apartment projects. . . .

(b) It was specifically agreed . . . that said sums were to be repaid from the proceeds of the sales of the apartment projects by plaintiffs.

2. Defendants breached the contract in that they demanded repayment of said loans prior to the sales of the apartment project by plaintiffs, and forced sales [thereof].

. . . .

II. Second Cause of Action—Misrepresentation

. . . .

2. On November 29, 1971, defendant, in order to secure part of [a $750,000] debt, induced plaintiffs to execute a promissory note in the amount of $600,000, payable on demand, secured by a second deed of trust on the apartment projects referred to above, by making the following representations:

(a) That the execution of the note and deed of trust would not change the terms or legal consequences of the loan agreement set forth in the First Cause of Action;

(b) That the . . . note was merely a vehicle to permit the defendant to show the loan on its books as a secured loan . . . for the benefit of the bank examiners.

[Thereafter, the complaint purports to allege the other elements of actionable fraud.]

III. Third Cause of Action—Breach of Contract

1. [P]laintiffs and defendants entered into an oral contract. . . .

(a) In order to secure a pre-existing debt of approximately $125,000 owed by plaintiffs to defendant, plaintiffs agreed to and did assign to defendant a certain note [for] $104,457.54 . . . from Gerald Bell . . . to Larry G. Mozingo and wife . . . secured by a deed of trust. . . .

(b) Defendant specifically agreed to release and reassign to plaintiffs the said note and deed of trust upon payment of said debt.

2. The debt was repaid by plaintiffs to defendant on or about September 26, 1972.

3. Defendant breached said contract in that defendants failed to reassign and return to plaintiffs the said Bell note and deed of trust and still refuses to do so.

4. As a result of the breach . . . plaintiffs have been coerced into a forced sale of said property, resulting in a loss of $295,000 to plaintiffs.

NCNB again moved to dismiss plaintiffs' amended complaint under Rule 12(b)(6). In an order dated 18 November 1974, the trial court denied the motion as to the Third Cause of Action on the Bell note. The court deferred ruling on the First and Second Causes of Action and asked to see a second amended complaint alleging the latter claim for misrepresentation. A second amended complaint was filed 29 November 1974, but the trial court in its discretion did not allow this pleading. In an order pursuant to Rule 12(b)(6), and dated 14 February 1975, the court dismissed the plaintiffs' First and Second Causes of Action in the amended complaint.

On 9 January 1975, NCNB filed answer to plaintiffs' claim based on the Bell collateral. It denied the existence of an agreement to return the Bell collateral prior to payment of the entire $750,000 debt. They averred that the Bell collateral was released following foreclosure of the apartment projects. NCNB also counterclaimed for a foreclosure deficiency judgment of $299,740.08.

In reply to the counterclaim plaintiffs asserted, as "fourth" and "fifth" defenses, the same breach of contract and misrepresentation claims contained in their amended complaint which were dismissed for failure to state claims upon which relief could be granted. They also asserted, as "second, third, sixth and seventh defenses," failure of consideration, sale of the property for less than its true value, mutual mistake of law and unconstitutional foreclosure. Motion by NCNB to strike all of plaintiffs' defenses to its counterclaim was allowed except for the third defense regarding sale of the property for less than its value. NCNB also moved for summary judgment which was accompanied by affidavits of the bank officers stating that there was no agreement to release the Bell collateral

until the entire debt was paid, and that at the time of fore-closure the plaintiffs owed $645,592.45; and that the M.A.I. appraisal of the property foreclosed was $1,548,000 and NCNB's bid was $345,851, with prior mortgages of $1,229,139.58 exist-ing on the property. The trial court entered summary judgment for NCNB on all issues except the actual value of the projects at the time of foreclosure. That issue was reserved for trial.

*Joseph F. Bowen, Jr., for plaintiff appellants.*

*Everett & Cheatham, by James T. Cheatham and Edward J. Harper II, for defendant appellees.*

ARNOLD, Judge.

[1] We first consider whether the trial court erred in dismiss-ing, under G.S. 1A-1, Rule 12(b)(6), plaintiffs' claim for breach of the alleged oral contract to renew plaintiffs' unse-cured notes until payment could be made from proceeds of the sale of the apartment projects. Rule 12(b)(6) provides that a complaint must be dismissed when on its face it appears that no law supports it, that some fact essential to it is missing, or that some disclosed fact necessarily defeats it. *Hodges v. Wellons,* 9 N.C. App. 152, 175 S.E. 2d 690, *cert. den.* 277 N.C. 251 (1970). The trial court held that because the complaint alleged the contract to be in parol plaintiff failed to state a claim for which relief could be granted. We disagree.

The parol evidence rule, upon which the trial court relied, prohibits introduction of parol evidence to contradict the terms of a written agreement. If, however, only part of a contract is written, the test for determining whether the remaining part can be proved by parol is simply stated: If oral evidence does not contradict written it is admissible; otherwise, it is not ad-missible.

Plaintiffs allege an oral agreement that the note was to be paid only out of the proceeds from the sale of the projects. The note itself is silent on the question of the method of payment. Therefore, the plaintiffs' evidence is admissible to prove the existence of this alleged oral term.

The general rule is that parol evidence is admissible to show the agreed upon method of payment on a note. *See, Bor-den, Inc. v. Brower,* 284 N.C. 54, 199 S.E. 2d 414 (1973), and cases cited therein. *See also,* 2 Stansbury, Law of Evidence,

§ 256 (Brandis Rev. 1973). Plaintiffs particularly rely on a line of cases admitting parol evidence to show agreement that a note was to be paid out of a particular fund. For example, in *National Bank v. Winslow*, 193 N.C. 470, 137 S.E. 320 (1927), the maker of a demand note gave it to the payee who, in turn, endorsed it to the holder. The holder sued the maker on the note. The maker, by way of a defense, introduced evidence to prove a parol agreement, known to the holder, that the note be paid only out of proceeds from the sale of peanuts. Our Supreme Court held that such evidence was admissible and affirmed judgment for the maker. *Accord, Trust Co. v. Wilder*, 206 N.C. 124, 172 S.E. 884 (1934) (note payable only out of proceeds from the sale of land); *Stack v. Stack*, 202 N.C. 461, 163 S.E. 589 (1932) (note payable only out of proceeds from land); *Evans v. Freeman*, 142 N.C. 61, 54 S.E. 847 (1906) (note payable only out of proceeds from sale of patent rights in a machine.)

NCNB argues that since the note in question was a demand note, an agreement that it could be paid only out of the proceeds from the sale of the projects, in effect, meant that it was not payable on demand, but only upon the occurrence of an uncertain event. Thus, they argue, the underlying oral agreement contradicts the terms of the writing. However, the case of *National Bank v. Winslow, supra,* stems from a suit on a demand note, and other cases, *supra,* involving notes payable on certain dates, substantially support the rule in *Winslow*. We do not agree with NCNB's argument that the oral agreement contradicts the demand note. All notes, including demand notes, are subject to the risk that the maker will be unable to pay upon presentment. By contracting to restrict the source of funds from which the note can be paid, the maker of the note only increases the already-present risk that the note cannot be paid. He does not change the demand provision at all.

[2]   NCNB asserts that we should not consider plaintiffs' next argument that the court erred in striking their second, fourth, fifth, sixth and seventh defenses, because plaintiffs fail to argue the legal principles underlying a motion to strike pursuant to G.S. 1A-1, Rule 12(f). Rule 12(f) permits the trial court to strike any "insufficient defense." We note however that plaintiffs do argue the principles for Rule 12(b)(6), an analogue to Rule 12(f), and the same tests apply. *Trust Co. v. Akelaitis*, 25 N.C. App. 522, 214 S.E. 2d 281 (1975).

**[3]** Plaintiffs' fourth defense alleges breach by NCNB of their contract that the $600,000 note be paid only out of proceeds from sale of the projects. We have held that plaintiffs can try to prove this breach of contract. If it is proved, it is a defense. G.S. 25-3-305 (2) ; 25-3-306 (b). Therefore, the court erred in striking it. Plaintiffs' fifth defense alleges misrepresentation about the legal effect of executing the demand note. Since the parol evidence rule does not bar proof of the contract, there could have been no misrepresentation. This defense was properly stricken. Plaintiffs' sixth defense alleges a mutual mistake of law as to the consequences of the parol evidence rule. There was no mistake, and this defense was also properly stricken.

**[4]** Plaintiffs' second defense alleges that plaintiffs received no consideration in exchange for executing the $600,000 note and deed of trust. Lack of consideration is a contract defense that can properly be raised in this action on a note. G.S. 25-3-305 (2) ; 25-3-306 (c). It appears from facts alleged in the pleadings that plaintiffs may have obtained no benefit in exchange for executing the new note and deed of trust. It is alleged in the pleadings that the total outstanding debt of $750,000 was not reduced. The time for payment was not extended. No more money was loaned, and, the deed of trust itself benefited NCNB, if only for the purpose of satisfying the bank examiners. We conclude that the defense of no consideration is properly raised by the pleadings and that it was error to strike it.

**[5]** Plaintiffs further contend that it was error to allow defendant's motion to strike their seventh defense wherein they attack the constitutionality of the North Carolina foreclosure procedure. They contend that they had no opportunity for a hearing under G.S. 45-21.34 to assert defenses to the foreclosure, and plaintiffs cite *Turner v. Blackburn,* 389 F. Supp. 1250 (W.D.N.C. 1975) as authority. Plaintiffs' contention is without merit. The *Turner* decision was more than a year after the foreclosure sale, and *Turner* only applies prospectively. (Also, see: G.S. 45-21.33 (c) (3) which does not apply to foreclosures commenced prior to ratification date of June 6, 1975).

In summary, the motion to strike by NCNB was properly allowed as to plaintiffs' fifth, sixth and seventh defenses. It was improperly allowed as to the second and fourth defense.

**[6]** Finally, plaintiffs contend that the court erred in granting summary judgment against them as to the third cause of action,

breach of the alleged contract to return the Bell note. Plaintiffs' verified complaint alleged that they had assigned the "Bell collateral" to defendant with defendant's specific agreement to reassign the Bell collateral to plaintiffs upon payment of the $125,000; that plaintiffs had paid the $125,000; and that defendant had failed to reassign the Bell collateral.

By affidavits of its officers, NCNB denied the contract to reassign the Bell collateral and said that the Bell collateral had subsequently been returned to plaintiffs. NCNB argues that summary judgment was proper because its affidavits established that the assignment of the Bell collateral was not subject to any agreement to release the collateral before the entire indebtedness was paid, and because plaintiffs had produced no affidavits in opposition to facts contained in NCNB's affidavits. It cites Rule 56(e) requiring, *inter alia:* "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

The court may consider, at the hearing on the motion for summary judgment, pleadings, affidavits which meet the requirements of Rule 56(e), depositions, answers to interrogatories, admissions, oral testimony, documentary material, facts subject to judicial notice, and such presumptions as would be available at trial. *Butler v. Berkeley,* 25 N.C. App. 325, 213 S.E. 2d 571 (1975). As pointed out in *Page v. Sloan,* 281 N.C. 697, 705, 190 S.E. 2d 189 (1972) :

> "A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify as to the matters stated therein."

Plaintiffs' verified complaints were made of their own personal knowledge, and they set forth the particulars of such facts as would be admissible in evidence. Moreover, it affirmatively appears that plaintiffs, Mr. and Mrs. Mozingo, are competent to testify as to the matters stated in their complaint. When their verified complaint is treated as an affidavit in compliance with G.S. 1A-1, Rule 56(e) they have established a genuine issue as to whether there was a breach of the alleged

State Bar v. Hall

agreement to release the Bell collateral upon payment of $125,-000. The granting of summary judgment for NCNB as to plaintiffs' third cause of action was error.

Judgment is reversed and the cause remanded for proceedings consistent with this opinion.

Reversed and remanded.

Judges MORRIS and HEDRICK concur.