ROBERT D. HINSHAW, Plaintiff v. MELVIN WRIGHT, JR.; CARL F.
PARRISH; T. LAWSON NEWTON, Defendants

No. 9021SC1304

(Filed 21 January 1992)

1. **Contracts § 106 (NCI4th)— law partners—withdrawal agreement—partnership agreement superceded**

    The trial court did not err in concluding that the terms and conditions of the parties' 1986 agreement superceded and controlled the withdrawal provisions in their 1983 partnership agreement, since the subject matter of the later agreement dealt comprehensively with payments upon termination for capital and receivables and detailed the amount of money plaintiff received without reference to the 1983 partnership agreement; the 1986 contract was complete on its face and included a merger clause; all the parties were attorneys who presumably understood basic contract law and the effect of merger clauses; and plaintiff testified that he was involved in negotiating the 1986 agreement.

    **Am Jur 2d, Contracts §§ 397, 513, 520, 542; Partnership §§ 103, 105-108.**

2. **Evidence and Witnesses § 2024.1 (NCI4th)— testimony to explain ambiguous contract provision—testimony not excluded by parol evidence rule**

    In an action to determine the rights and liabilities of the parties pursuant to a withdrawal agreement executed in 1986 which superceded their partnership agreement of 1983, the trial court did not err in allowing defendants to testify about plaintiff's representations concerning a fee for work performed by plaintiff while still part of the firm, since such evidence did not allow defendants to assert a parol warranty of collectibility, but instead served to explain a paragraph of the 1986 agreement regarding receivables.

    **Am Jur 2d, Contracts § 403.**

3. **Appeal and Error § 513 (NCI4th)— correct result—incorrect reasoning—judgment stands**

    Even though the trial court erred in holding that former law firm partners who had withdrawn from the parties' part-

nership assigned their claims and interest in law firm assets and receivables to defendants rather than waived those interests, the trial court's judgment nevertheless stands, since the correct result was reached.

**Am Jur 2d, Appeal and Error § 727.**

4. **Fiduciaries § 2 (NCI3d)— failure to make timely delivery of insurance policies—breach of fiduciary duty**

Evidence was sufficient to support the trial court's determination that plaintiff was responsible for procuring life insurance and retirement benefits for a law firm, and that he breached his fiduciary duty to defendants by failing to deliver the insurance policies to defendants within the twenty-day rescission period as defendants requested.

**Am Jur 2d, Partnership §§ 420, 623, 624.**

5. **Fiduciaries § 2 (NCI3d)— breach of fiduciary duty—jurisdiction of state court**

The Superior Court of Forsyth County had subject matter jurisdiction over defendants' claim against plaintiff for breach of fiduciary relationship because plaintiff's conduct fell outside the purview of ERISA and did not relate to ERISA in that plaintiff's breach of fiduciary duty arose not out of any administrative responsibility to an insurance plan but rather out of his fiduciary duty to inform his fellow partners that he had received the insurance policy prior to the expiration of the twenty-day rescission period.

**Am Jur 2d, Pensions and Retirement Funds § 1197.**

6. **Partnership § 4 (NCI3d)— debt of partnership—pro rata share assigned to each partner—error**

The trial court erred in assigning to each defendant a pro rata share of the debt owed to plaintiff pursuant to the parties' agreement for plaintiff's withdrawal from the law firm. N.C.G.S. § 59-45.

**Am Jur 2d, Partnership § 520.**

APPEAL by plaintiff from judgment entered 21 September 1990 in FORSYTH County Superior Court by *Judge Dexter Brooks*. Heard in the Court of Appeals 14 October 1991.

**HINSHAW v. WRIGHT**

[105 N.C. App. 158 (1992)]

*Clyde C. Randolph, Jr., attorney for plaintiff-appellant.*

*David F. Tamer, attorney for defendants-appellees.*

WYNN, Judge.

Plaintiff and defendants formed a law firm on 1 May 1983 and drew up an agreement which governed various aspects of the partnership. One of the responsibilities plaintiff assumed was the maintenance of life insurance policies for firm members.

On 31 August 1986, plaintiff withdrew from the firm and entered into a second agreement with the remaining partners. This 1986 agreement contained a merger clause and provided that defendants would pay plaintiff a lump sum of $10,000, and payments of $511.67 per month until they paid a total of $40,700 for his interest in the firm. Paragraph five of the agreement called for plaintiff to remit to the firm any fees he received which had been earned by the firm for his services prior to 1 September 1986. Plaintiff and the firm manager reviewed his work in progress and accounts receivable prior to plaintiff's withdrawal.

Defendants made the $10,000 lump-sum payment, as well as ten monthly payments. Defendants ceased making payments after plaintiff failed to remit $6,909 due the firm for work performed in *La Notte, Inc. v. New Way Gourmet, Inc.*, 83 N.C. App. 480, 350 S.E.2d 889 (1986), *cert. denied*, 319 N.C. 459, 354 S.E.2d 888 (1987), and from another client, Mr. Wallace Vanhoy.

Following the cessation of payments by defendants, plaintiff filed an action seeking a declaratory judgment of the rights and liabilities of the parties under the 1983 law firm partnership agreement and the 1986 withdrawal agreement. Defendants filed a counterclaim, alleging that plaintiff breached his fiduciary duty to defendants by failing to notify them when life insurance policies which defendants wished to cancel were delivered to plaintiff. Defendants also sought to have the unremitted funds setoff against any money still owed to plaintiff. The trial judge entered judgment as follows: (1) plaintiff recovered from defendants the sum of $15,350 under the 1986 withdrawal agreement; (2) defendants were allowed an offset against plaintiff's recovery in the amount of $6,909 received by plaintiff from the *La Notte* case and $2,900 received by plaintiff from Wallace Vanhoy; and (3) defendants recovered $4,828 from plaintiff under their breach of fiduciary duty claim,

with $2,174 to defendant Wright, $2,174 to defendant Parrish, and $480 to defendant Newton. From this judgment, plaintiff appealed.

I.

[1]  Plaintiff first assigns error to the trial court's determination that the 31 August 1986 agreement supercedes and controls provisions contained in the 1 May 1983 partnership agreement. Plaintiff contends that, as a matter of law, the making of the second contract dealing with the same subject matter does not abrogate or discharge the first contract and, that the 1986 agreement does not purport to alter or modify the terms of the 1983 agreement. We disagree.

The North Carolina Supreme Court, in *Wittaker General Medical Corp. v. Daniel*, 324 N.C. 523, 379 S.E.2d 824, *reh'g denied*, 325 N.C. 231, 381 S.E.2d 792, *reh'g denied*, 325 N.C. 277, 384 S.E.2d 531 (1989), discussed the methods employed in determining whether a second contract supercedes the first. In *Daniel*, plaintiff employer sought damages for its employee's breach of a covenant not to compete. The employee, a salesperson, signed a covenant not to compete and, subsequently, entered a second contract that altered the method of her compensation and her territory but did not contain a non-competition agreement. The *Daniel* Court stated the following concerning novation:

> A novation occurs when the parties to a contract substitute a new agreement for the old one. The intent of the parties governs in determining whether there is a novation. If the parties do not say whether a new contract is being made, the courts will look to the words of the contracts, and the surrounding circumstances, if the words do not make it clear, to determine whether the second contract supersedes the first. If the second contract deals with the subject matter of the first so comprehensively as to be complete within itself or if the two contracts are so inconsistent that the two cannot stand together a novation occurs.

*Id.* at 526, 399 S.E.2d at 827. The Court upheld the jury's decision to enforce both contracts consistently, stating that the jury could have found that this was the intent of the parties.

Additionally, the presence of a merger clause in a second contract may cause a novation in a second contract. In *Zinn v. Walker*, 87 N.C. App. 325, 361 S.E.2d 314 (1987), *disc. review denied*, 321 N.C. 747, 366 S.E.2d 871 (1988), this Court noted that "[m]erger

clauses create a rebuttable presumption that the writing represents the final agreement between the parties. Generally, in order to effectively rebut the presumption, the claimant must establish the existence of fraud, bad faith, unconscionability, negligent omission or mistake in fact." *Id.* at 333, 361 S.E.2d at 318. The one exception to this general rule applies when giving effect to the merger clause would frustrate the parties' true intentions. *Id.*

In the case at bar, the 1983 Partnership Agreement contained the following relevant provisions on withdrawal:

Section 4.2. *Payments to Terminate a Partner.* Upon the termination of a Partner's interest in the firm, the firm shall pay to the Partner, or to the Partner's successor-in-interest, the following sums:

(a) *Payment for Capital.* The amount of the terminated Partner's capital account as of the date of termination, payable without interest within ninety (90) days after the date of termination. This payment is intended to be for the terminated Partner's interest in Partnership Property under Section 736(b)(1) of the Internal Revenue Code. In determining the amount of the capital account, fixed assets shall be valued as agreed upon by the terminated Partner in the firm, or in the absence of such an agreement at appraised value as determined by two qualified appraisers . . . .

(b) *Payment for Receivables and Work in Process.* An amount equal to 50.0% of the average of the terminated Partner's taxable income from the firm during each of the last three (3) complete fiscal years of the firm, during which he was a Partner, payable in sixty (60) equal monthly installments, without interest, beginning ninety (90) days after the date of his termination. This payment is intended to be an income payment under Section 736(a) of the Internal Revenue Code.

The 1986 Withdrawal Agreement contained the following provisions concerning payments upon termination:

3. For and in consideration of such transfer [of Hinshaw's partnership interest], the Firm agrees to pay to Hinshaw the sum of Forty Thousand Seven Hundred Dollars ($40,700.00) as follows:

(a) Ten Thousand Dollars ($10,000.00) in cash or certified funds on or before September 2, 1986,

(b) Five Hundred and Eleven Dollars and Sixty-Seven Cents ($511.67) per month, beginning November 1, 1986 and continuing on the first day of each month thereafter until the sum is paid. No interest shall accrue on said sum.

. . . .

5. Hinshaw agrees to assign to the firm all of his right, title and interest in and to all monies, debts, accounts and work in process (billed and unbilled) due or hereafter to become due the partnership as a result of the services rendered by Hinshaw through and including August 31, 1986. The firm is authorized to take all appropriate action in order to collect said amounts and Hinshaw hereby authorizes the firm to use his name in doing so if such is reasonably necessary.

The 1986 agreement also contained a merger clause, and plaintiff did not rebut the novation presumption under this Court's decision in *Zinn*. Thus, the determinative issue is whether the trial court's finding that the 1986 agreement superceded the 1983 agreement frustrates the intention of the parties as required by the decisions in *Daniel* and *Zinn*. In our opinion, the subject matter of the latter agreement deals comprehensively with payments upon termination for capital and receivables, detailing the amount of money plaintiff received without reference to the 1983 Partnership Agreement. The 1986 contract also is complete, on its face, and includes a merger clause. We further note that all of the parties are attorneys who presumably possess an understanding of basic contract law and the effect of merger clauses, and plaintiff testified that he was involved in negotiating the 1986 agreement. After examining the relevant provisions of the two agreements and the evidence presented at trial, we find that the trial court did not err in concluding that the terms and conditions of the 1986 agreement supercede and control the withdrawal provisions in the 1983 agreement.

II.

[2]   Plaintiff next assigns error to the trial court's admission into evidence of the testimony of defendants Wright, Parrish, and Newton about plaintiff's representations concerning the $6,909.00 fee in

the *La Notte* case. Plaintiff contends that this evidence amounts to an inadmissible parol warranty of collectibility. We disagree.

The parol evidence rule is not a rule of evidence but of substantive law. H. Brandis, *North Carolina Evidence* § 251 (3d ed. 1988). The traditional statement of the rule is that when a writing is integrated, all prior and contemporaneous negotiations or agreements are merged into the writing. *Cantrell v. Woodhill Enterprises, Inc.*, 273 N.C. 490, 160 S.E.2d 476 (1968). A writing is integrated if it supercedes all other agreements related to the transaction. H. Brandis, *supra*, at § 252. One exception to the parol evidence rule allows for evidence which explains ambiguous terms in the contract. *Mozingo v. North Carolina Nat'l Bank*, 31 N.C. App. 157, 229 S.E.2d 57 (1976), *disc. review denied*, 291 N.C. 711, 232 S.E.2d 204 (1977).

In the case at bar, the 1986 Withdrawal Agreement was integrated because, as we found in the previous section of this opinion, it superceded the provisions of the previous agreement on withdrawal. Thus, parol evidence is admissible only if it serves to explain an ambiguous term in the 1986 agreement. Plaintiff argues that the trial court allowed defendants to assert a parol warranty of collectibility. *See Clifford v. Riverbend Plantation, Inc.*, 312 N.C. 460, 323 S.E.2d 23 (1984) (holding that absent fraud in the inducement, warranties cannot be asserted by parol); *Dellinger v. Lamb*, 79 N.C. App. 404, 339 S.E.2d 480, *disc. review denied*, 317 N.C. 702, 347 S.E.2d 39 (1986) (same). We disagree with plaintiff's contention. The trial court allowed defendants' testimony concerning the *La Notte* fee to explain paragraph five of the 1986 agreement regarding receivables. As such, this evidence did not violate the parol evidence rule and was admitted properly.

III.

[3] Plaintiff also contends that the trial court erred in finding that former law firm partners Charles J. Alexander, II, and Gary B. Tash, when they withdrew from the firm, assigned their claims and interest in law firm assets and receivables to defendants. Plaintiff argues that there was no valid assignment because Tash and Alexander waived their rights to the *La Notte* receivables in their agreement with defendants.

An assignment is a formal transfer of property or property rights from one to another, *Payne v. Buffalo Reinsurance Co.*, 69

N.C. App. 551, 317 S.E.2d 408 (1984), whereas a waiver is the intentional relinquishment of a known right, *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 219 S.E.2d 190 (1975). In the instant case, the specific language of the withdrawal agreement between Alexander and Tash and the firm indicated a waiver, not an assignment. The trial court incorrectly termed the waiver as an assignment; but, by waiving their interest in the fees, the remaining firm members were entitled to their shares of the waived fee as if there had been an assignment of the interest. Because the correct result was reached in this case, the trial court's judgment stands with regard to the waiver of the *La Notte* fees. *See In re Will of Pendergrass*, 251 N.C. 737, 112 S.E.2d 562 (1960) (A judgment below will stand even though it is based on faulty reasoning if the correct result was reached.); *Payne*, 69 N.C. App. 551, 317 S.E.2d 408 (same). Plaintiff's assignment of error is overruled.

IV.

[4] Additionally, the plaintiff assigns error to the trial court's determination that plaintiff was responsible for procuring life insurance and retirement benefits for the law firm and that he breached his fiduciary duty to defendants. Plaintiff allegedly breached his duty by failing to deliver the insurance policies to defendants within the twenty-day rescission period as defendants requested.

If there is any competent evidence in the record to support the trial court's finding of fact, this Court must sustain the finding on appeal even if there is evidence that would support a contrary finding. *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975). Plaintiff challenges the trial court's finding that plaintiff knew defendants wanted to rescind the policy but waited to deliver the policies until after the twenty-day rescission period had run. After reviewing the record, we find there was competent evidence to support the trial court's finding of fact. Mr. Wright testified that the partners asked Mr. Hinshaw if he had received the insurance policies. Mr. Hinshaw stated that he had not received them. The partners then told him that when the policies came in, they wanted the opportunity to send them back or rescind them within the twenty-day rescission period. This testimony alone is sufficient to support the trial court's finding. We, therefore, overrule plaintiff's assignment of error on this point.

## V.

[5]  Plaintiff further contends that the Superior Court of Forsyth County did not have subject matter jurisdiction over the defendants' breach of fiduciary duty claim. Plaintiff argues, for the first time on appeal, that because his alleged breach relates to the acquisition of life insurance, defendants' cause of action is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (1985 & Cum. Supp. 1990). We disagree.

ERISA, with certain exceptions not applicable to the instant case, preempts "any and all state law insofar as they may now or hereafter relate to any employee benefit plan." *Id.* § 1144(a). This preemption includes state decisional law and state statutes. *Id.* § 1144(c); *see Overcash v. Blue Cross & Blue Shield*, 94 N.C. App. 602, 381 S.E.2d 330 (1989). The Court of Appeals for the Fourth Circuit found that ERISA does not preempt a state law claim if the claim does not result in conflicting employer obligations, variable standards of recovery, affect whether benefits are paid, or directly affect the administration of the plan. *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir. 1989). The Second Circuit devised a similar test for ERISA preemption and held that if a statute "does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated." *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir. 1984), *cert. denied*, 472 U.S. 1008, 86 L.Ed.2d 718 (1985).

A claim for breach of fiduciary duty may be preempted by ERISA if the fiduciary is within the section 1002 definition:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Courts, in determining whether a person or an entity is a fiduciary, examine the function performed rather than the title held. *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518,

**HINSHAW v. WRIGHT**

[105 N.C. App. 158 (1992)]

1522 (11th Cir.), *reh'g denied*, 767 F.2d 938, *cert. denied*, 474 U.S. 995, 88 L.Ed.2d 360 (1985). As one court stressed, "ERISA permits employers to wear 'two hats,' and that they assume fiduciary status 'only when and to the extent' that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Amato v. Western Union Intern'l, Inc.*, 773 F.2d 1402, 1416-17 (2d Cir. 1985), *cert. dismissed*, 474 U.S. 1113, 89 L.Ed.2d 288 (1986).

In the case at bar, we find that plaintiff's breach of fiduciary duty occurred while conducting firm business. Plaintiff's breach of fiduciary duty arose not out of any administrative responsibility to an insurance plan, but rather out of his fiduciary duty to inform his fellow partners that he had received the insurance policy prior to the expiration of the twenty-day rescission period. Because plaintiff's conduct falls outside the purview of ERISA and, therefore, does not relate to ERISA, the Superior Court of Forsyth County had subject matter jurisdiction over defendants' claim against plaintiff for breach of fiduciary relationship. Plaintiff's contentions on this point are overruled.

## VI.

[6] Additionally, plaintiff contends that the trial court erred in assigning to each defendant a pro rata share of the debt owed to plaintiff. We agree.

Under N.C.G.S. § 59-45 (1989), "[a]ll partners are jointly and severally liable for the acts and obligations of the partnership." In the case at bar, the trial court allocated to each defendant a share proportional to his ownership in the firm. We find that the trial court erred by allocating a pro rata share and modify its judgment such that defendants are jointly and severally liable for the debt owed to plaintiff.

We have examined plaintiff's remaining assignments of error and find them to be without merit. The judgment of the trial court is affirmed in part and modified in part.

Affirmed in part and modified in part.

Judges WELLS and PARKER concur.